UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Caption in Compliance with D.N.J. LBR
9004-2(c)
**MEYNER AND LANDIS LLP**
**One Gateway Center, Suite 2500**
**Newark, New Jersey 07102**
**(973) 602-3457**
Attorneys for Secured Creditor Two River
Community Bank
David B. Grantz, Esq. (DG1967)

| | |
|---|---|
| In Re:<br><br>GEORGE SARIOTIS<br><br>        Debtor. | Case No.:    19-32528-MBK<br><br>Chapter:    11<br><br>Judge:    Michael B. Kaplan |

### CERTIFICATION OF DAVID B. GRANTZ, ESQ. IN SUPPORT OF MOTION BY TWO RIVER COMMUNITY BANK FOR RELIEF FROM THE AUTOMATIC STAY OR, IN THE ALTERNATIVE TO DISMISS THE CHAPTER 11 BANKRUPTCY PETITION

I, **DAVID B. GRANTZ, ESQ.**, of full age, do hereby certify and say:

      1.      I am an attorney duly admitted to practice law in the State of New Jersey and a Partner with the law firm of Meyner and Landis LLP, attorneys for secured creditor Two River Community Bank ("**Two River**").

      2.      I make this Certification in support of Two River's motion for relief from the automatic stay as to three (3) properties owned by George Sariotis ("**Debtor**") or owned by Debtor with other non-debtors.  In the alternative, Two River seeks an Order dismissing Debtor's Chapter 11 Bankruptcy Petition ("**Petition**") because it was filed in bad faith.

**The Wayside Property**

3.    On June 23, 2014, Two River extended a commercial loan to Debtor in the amount of $150,000, which was evidenced by a $150,000 Note (the "**6/23/14 Note**").  A true copy of the 6/23/14 Note is attached as Exhibit A.

4.    To secure payment of the 6/23/14 Note, Debtor executed and delivered to Two River a mortgage in the amount of $150,000 dated June 23, 2014 (the "**First Wayside Mortgage**") covering vacant land commonly known as 1046 Wayside Road, Tinton Falls, New Jersey (the "**Wayside Property**"). A true copy of the First Wayside Mortgage is attached as Exhibit B.

5.    Thereafter, on November 21, 2014, Two River extended a $300,000 term loan to GCS Contracting Corp. ("**GCS Corp.**") evidenced by a $300,000 Note (the "**11/21/14 Note**"). Exhibit C.

6.    The 11/21/14 Note was secured by a second mortgage ("**Second Wayside Mortgage**") in the amount of $300,000 dated November 21, 2014 covering the Wayside Property.   Exhibit D.   The First and Second Wayside Mortgages are referred to as the "**Wayside Mortgages**".

7.    Debtor and GCS Corp. thereafter defaulted on the 6/23/14 Note and the 11/21/14 Note and the Wayside Mortgages.

8.    As a result of the defaults, Two River filed a foreclosure complaint in the Superior Court of New Jersey, Docket No. F-26418-17 on November 22, 2017.

9.    An uncontested Final Judgment of Foreclosure ("**Wayside Judgment**") was entered on December 19, 2018 in the amount of $185,520.48 on the First Wayside Mortgage and $296,191.33 on the Second Wayside Mortgage as of November 13, 2018, with per diem

interest thereafter.  A true copy of the Wayside Judgment is attached as Exhibit E.

10.    A Sheriff's sale of the Wayside Property was thereafter scheduled for December 2, 2019 at 2:00 pm.[1]

11.    However, Debtor filed his Petition **minutes** before the Sheriff's sale on December 2, 2019, thus staying sale of the Wayside Property.  See copy of Notice of Bankruptcy Case Filing attached as Exhibit F.

12.    The Petition lists the value of the Wayside Property at **$150,000**.

13.    There is no equity in the Wayside Property.  According to the Wayside Judgment, the total sum of **$481,711.81** was owed on the Wayside Mortgages, with per diem interest accruing after November 13, 2018.

14.    Moreover, there is a tax lien on the Wayside Property.  According to the Tinton Falls tax collector, there is **$13,132.87** due as of January 31, 2020, which does not include taxes for first quarter 2020.  Interest on the tax lien accrues at 18%, thus further deteriorating Two River's equity in the Wayside Property.

15.    **Significantly, according to the Petition, Debtor has no source of income other than Social Security benefits -- $30,696 for 2019.**

16.    In light of the fact that: (a) Debtor's petition was filed minutes before the Sheriff's sale; (b) there is negative equity in the Wayside Property; (2) Debtor is not paying real estate taxes, which resulted in a tax lien on the Property; (3) the land is vacant and unnecessary for reorganization; and (4) Debtor admits he has no source of income to fund any viable Chapter 11 Plan, Two River requests the Court lift the automatic stay as to the Wayside Property to allow Two River to continue with its Sheriff's sale.

---

[1] The Debtor exhausted his statutory adjournments adjourning the sale of the Wayside Property several times.

**61 Redwood Drive**

17.     On December 6, 2011, Two River extended a commercial line of credit loan to GCS Corp. in the amount of $150,000, which was evidenced by a $150,000 Note (the "**12/6/11 Note**").  A copy of the 12/6/11 Note is attached as Exhibit G.

18.     To secure payment of the 12/6/11 Note, Debtor, Cindie Sariotis, Gregory Sariotis and Thalia Sariotis[2] executed and delivered to Twin River a second mortgage in the amount of $150,000 (the "**Second Redwood Mortgage**") covering real property commonly known as 61 Redwood Drive, Ocean Township, NJ (the "**Redwood Property**").[3]  A true copy of the Second Redwood Mortgage is attached as Exhibit H.

19.     As described above, on November 21, 2014, GSC Corp. executed and delivered to Two Rivers the 11/21/14 Note. (See Exhibit C above).

20.     To further secure payment of the 11/21/14 Note. Debtor, Cindie Sariotis, Gregory Sariotis and Thalia Sariotis executed and delivered to Two River a third mortgage in the amount of $300,000 dated November 21, 2014 (the "**Third Redwood Mortgage**") covering the Redwood Property.  A copy of the Third Redwood Mortgage is attached as Exhibit I.  The Second and Third Redwood Mortgages are together referred to as the "**Redwood Mortgages**".

21.     CGS Corp. thereafter defaulted on the 12/6/11 Note and 11/21/14 Note and Redwood Mortgages.

22.     As a result of the defaults, Two Rivers filed a foreclosure action in the Superior Court of New Jersey, Docket No. F-26412-17 on November 22, 2017 (the "**Redwood**

---

[2] At the time of the Second Redwood Mortgage, Debtor and Cindie Sariotis held a 95% interest in the Redwood Property as tenants by the entirety and Gregory Sariotis and Thalia Sariotis (Debtor's mother) held a 5% interest as tenants by the entirety.  Gregory passed away on October 3, 2015.
[3] The Redwood Property is occupied by Thalia Sariotus.  In addition, Two River holds a first residential mortgage on the Redwood Premises in the face amount of $280,000.  This mortgage is current.

Foreclosure").

23.     Defaults were entered in the Redwood Foreclosure on April 27, 2018 against Debtor, Cindie Sariotis, Thalia Sariotis (and others) and Two River filed a Motion for Final Judgment of Foreclosure on September 19, 2019.[4]

24.     The Certification of Amount Due filed in support of the Motion states that the amounts due and owing on the Second and Third Redwood Mortgages were $188,853.75 and $315,714.29, respectively, as of August 22, 2019, totaling **$504,568.04,** with per diem interest continuing to accrue, thus further eroding Two River's equity in the Redwood Property. (Exhibit J).

25.     In addition, real estate taxes have not been paid and there is tax lien on the Redwood Property in the approximate amount of $19,849. Exhibit K.

26.     The Petition lists the value of the Redwood Property at **$450,000,** which is less than the amounts due on the Redwood Mortgages, and does not include the amount due on the first mortgage.

27.     In light of the fact that (a) there is negative equity in the Redwood Property; (b) real estate taxes are due and owing; (c) the Redwood Property is not necessary to Debtor's reorganization; and (d) Debtor has no source of income to fund a viable Chapter 11 Plan, Two River requests the Court lift the stay as to the Redwood Property to allow Two River to continue with its foreclosure action in state court.

**1801 Pitney Street**

28.     As stated above, on December 6, 2011, CGS Corp. executed and delivered to Two River the 12/6/11 Note. (See Exhibit G above).

---

[4] The Court denied Two River's motion for foreclosure judgment on October 10, 2019 for reasons unrelated to the validity of the Redwood Mortgages.

29.     To further secure payment of the 12/6/11 Note, Debtor and Cindie Sariotis executed and delivered to Two River a third mortgage[5] in the amount of $150,000 dated December 6, 2011 (the "**Third Pitney Mortgage**") covering real property on their residence, commonly known as 1801 Pitney Street, Ocean Township, NJ 07755 (the "**Pitney Property**").[6] (Exhibit L).

30.     As stated above, on June 23, 2014, CGS Corp. executed and delivered to Two River the 6/23/14 Note. (See Exhibit A above).

31.     To further secure payment of the 6/23/14 Note, Debtor and Cindie Sariotis executed and delivered to Two River a fourth mortgage in the amount of $150,000 dated June 23, 2014 (the "**Fourth Pitney Mortgage**") covering the Pitney Property. (Exhibit M).

32.     As stated above, on November 21, 2014, CGS Corp. executed and delivered to Two River the 11/21/14 Note. (See Exhibit C above).

33.     To further secure payment of the 11/21/14 Note, Debtor and Cindie Sariotis executed and delivered to Two River a fifth mortgage in the amount of $300,000 (the "**Fifth Pitney Mortgage**") covering the Pitney Property. (Exhibit N). The Third, Fourth and Fifth Pitney Mortgages are together referred to as the "**Pitney Mortgages**".

34.     Debtor and CGS Corp. thereafter defaulted on the 12/6/11 Note, the 6/23/14 Note and 11/21/14 Note and the Pitney Mortgages.

35.     As a result of the defaults, Two Rivers filed a foreclosure complaint against the Pitney Mortgages ("**Pitney Foreclosure**") on November 22, 2017 in the Superior Court of New Jersey, Docket No. F-26403-17.  A copy of the Pitney Foreclosure Complaint is attached as

---

[5] The Third Pitney Mortgage was originally a second mortgage on the Pitney Property but was subordinated to the third residential mortgage dated December 6, 2011 in the amount of $200,000.
[6] The first and second residential mortgages on the Pitney Property in the face amounts of $210,000 and $200,000, respectively, are apparently current.

Exhibit O.

36.    Defaults were entered on April 27, 2018 against Debtor, Cindy Sariotis (and others) in the Pitney Foreclosure. The Motion for Final Foreclosure Judgment has not yet been filed.

37.    According to the Pitney Foreclosure Complaint, the following principal amounts were due and owing on the Pitney Mortgages as of October 17, 2017: $149,980 on the Third Mortgage, $149,956 on the Fourth Mortgage and $254,716.52 on the Fifth Mortgage, totaling **$554,652,** which does not include accrued interest or late fees.

38.    According to the Petition, $135,271 is owed on the first mortgage covering the Pitney Property.

39.    The Petition lists the value of the Pitney Property at **$603,000**.

40.    In light of the fact that (a) there is no equity in the Pitney Property due to the five mortgages, and (b) Debtor has no source of income to fund a viable Chapter 11 Plan, Two River requests the Court lift the stay as to the Pitney Property to allow Two River to continue the Pitney Foreclosure.

**Debtor's Petition**

41.    In addition to the fact that the Petition was filed in bad faith, the Petition is inaccurate and confusing as to the mortgages on the Properties.

**A.    The Pitney Property**

42.    The Petition lists only three mortgages encumbering the Pitney Property: Selene Financial LP ($135,271), Two River ($284,900) and Two River (unknown).

43.    There are in fact five (5) mortgages on the Pitney Property according to a 2017 title search. See pertinent pages of title search attached as Exhibit P.

### B.    The Redwood Property

44.    The Petition lists only one mortgage for $260,000 on the Redwood Property, which is held by Two River.

45.    As stated above (see Exhibit J -- Certification of Amount Due), there are two mortgages (the Redwood Mortgages) in the total amount of $500,568.75, which sum is greater than Debtor's valuation of the Redwood Premises, i.e., $450,000.

### C.    The Wayside Property

46.    As for the Wayside Property, although the Petition lists only one mortgage ($205,228.58 owed) covering the Property, there were in fact two mortgages (the Wayside Mortgages).    The Wayside Judgment (conveniently not mentioned in the Petition) is $481,711.81 as of November 13, 2018 – more than Debtor's valuation of $150,000.

### D.    Conclusion

47.    In light of the fact that: (a) Debtor's petition was filed minutes before the Sheriff's sale of the Wayside Property; (b) there is no equity in any of the three Properties; (c) Debtor is not paying real estate taxes on two of the Properties; (d) at least two (if not all) of the Properties are unnecessary for reorganization; and (4) Debtor admits he has **no source of income** to fund a viable Chapter 11 Plan, Two River requests the Court lift the automatic stay as to the Properties to allow Two River to continue with its Sheriff's sale and pending foreclosures or, alternatively, to dismiss the Petition as it was filed in bad faith.

## <u>CERTIFICATION</u>

I certify that the above statements are true to the best of my knowledge and belief. I am aware that if any of the above statements are willfully false that I am subject to punishment.

_/s/ David B. Grantz_
David B. Grantz, Esq.

DATED: January 28, 2020

# EXHIBIT A



CERTIFIED TO BE A TRUE COPY

A NEW JERSEY ATTORNEY AT LAW

COPY

**TwoRiver**
COMMUNITY BANK
*Your Community. Your Bank.*

## PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No. | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $150,000.00 | 06-23-2014 | 06-23-2015 | **** | RC/Clal/11 | | **** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

Borrower:  George Sariotis
1801 Pitney Street
Oakhurst, NJ  07755

Lender:  TWO RIVER COMMUNITY BANK
Middletown
1250 Highway 35 South
Middletown, NJ  07748
(732) 706-9009

**Principal Amount:  $150,000.00**                                        Date of Note:  June 23, 2014

**PROMISE TO PAY.**  George Sariotis ("Borrower") promises to pay to TWO RIVER COMMUNITY BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Hundred Fifty Thousand & 00/100 Dollars ($150,000.00), together with interest on the unpaid principal balance from June 23, 2014, until paid in full, together with all applicable fees and expenses.

**PAYMENT.**  Borrower will pay this loan in one principal payment of $150,000.00 plus interest on June 23, 2015.  This payment due on June 23, 2015, will be for all principal, accrued interest, and all other applicable fees and expenses, if any, not yet paid.  In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning July 23, 2014, with all subsequent interest payments to be due on the same day of each month after that.  Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to any unpaid collection costs; and then to any late charges.  Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.**  The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Wall Street Journal Prime Rate (the "Index").  The Index is not necessarily the lowest rate charged by Lender on its loans.  If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower.  Lender will tell Borrower the current index rate upon Borrower's request.  The interest rate change will not occur more often than each daily.  Borrower understands that Lender may make loans based on other rates as well.  The index currently is 3.250% per annum.  Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 1.000 percentage point over the Index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 5.000% per annum based on a year of 360 days.  NOTICE:  Under no circumstances will the interest rate on this Note be less than 5.000% per annum or more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.**  Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.  All interest payable under this Note is computed using this method.

**PREPAYMENT; MINIMUM INTEREST CHARGE.**  In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a minimum interest charge of $5.00.  Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due.  Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule.  Rather, early payments will reduce the principal balance due.  Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language.  If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender.  All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to:  TWO RIVER COMMUNITY BANK, Middletown, 1250 Highway 35 South, Middletown, NJ  07748.

**LATE CHARGE.**  If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment.  This late charge shall be paid to Lender by Borrower for the purpose of defraying the expense incident to the handling of the delinquent payment.

**INTEREST AFTER DEFAULT.**  Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by adding an additional 5.000 percentage point margin ("Default Rate Margin").  The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default.  However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.**  Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.**  Borrower fails to make any payment when due under this Note.

**Other Defaults.**  Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.**  Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**Environmental Default.**  Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any loan.

**False Statements.**  Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.**  The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of

Loan No: ▮▮▮▮▮▮▮▮

**PROMISSORY NOTE**
(Continued)

Page 2

---

creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the Indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within thirty (30) days; or (2) if the cure requires more than thirty (30) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of New Jersey without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of New Jersey.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $32.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by a valid first mortgage lien on 1048 Wayside Road a/k/a Lot 36.01 in block 117, Borough of Tinton Falls, County of Monmouth, New Jersey; Assignment of leases and rents; UCC-1 financing statement on fixtures and equipment; a valid fourth mortgage on 1801 Pitney Street a/k/a Lot 105 Block 33, Oakhurst (Township of Ocean), New Jersey; Assignment of leases and rents.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

X _____
George Sarlotis

EXHIBIT B

RECORDATION REQUESTED BY:
    TWO RIVER COMMUNITY BANK
    Middletown
    1250 Highway 35 South
    Middletown, NJ  07748

Certified True Copy
Attest

WHEN RECORDED MAIL TO:
    TWO RIVER COMMUNITY BANK
    Corporate Headquarters
    766 Shrewsbury Ave.
    Tinton Falls , NJ  07724

SEND TAX NOTICES TO:
    George Sariotis
    1801 Pitney Street
    Oakhurst, NJ  07755

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE ONLY

This Mortgage prepared by:  X
    Name of Signer:  Lorraine Hotaling, Loan Operations
    TWO RIVER COMMUNITY BANK

## CONSTRUCTION MORTGAGE

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means George Sariotis and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq., ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., the New Jersey Industrial Site Recovery Act, NJSA Section 13:1K-6 ("ISRA"), the New Jersey Spill Compensation and Control Act, NJSA 58:10-23.11, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means George Sariotis.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Mortgage.

**Lender.** The word "Lender" means TWO RIVER COMMUNITY BANK, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated June 23, 2014, **in the original principal amount of $150,000.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. NOTICE TO GRANTOR:  THE NOTE CONTAINS A VARIABLE INTEREST RATE.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental

# Charles Surmonte P.E. & L.S.

Professional Engineer and Land Surveyor
301 Main Street, Allenhurst, NJ 07711
Phone 732-660-0606 Fax 732-660-0404

28 March 2014

Description of Property known as Lot 36.01, Block 117, situated in the
Borough of Tinton Falls, Monmouth County, New Jersey

**Beginning at a point,** said point being in the easterly line of Wayside Road, aka County
Route 38 (as widened to 30.0 feet from centerline thereof), said point being at a concrete
monument set at its intersection with the common boundary line of proposed Lots 36.01
& 37.01, Block 117; thence proceeding,

1. Along the southerly line of Lot 37.01, Block 117, North 83 degrees 41 minutes 00
seconds East, a distance of 266.02 feet to a point marked by a capped pin found; thence,

2. Along the westerly line of Lot 37.01, Block 117, South 06 degrees 19 minutes 00
seconds East, a distance of 140.33 feet to a point marked by a capped pin found; thence,

3. Along the northerly line of Lots 34.01 & 35, Block 117, South 83 degrees 41 minutes
00 seconds West, a distance of 290.26 feet to a point in the easterly line of Wayside Road
(30' from centerline); thence,

4. Along said easterly line of Wayside Road, North 03 degrees 29 minutes 00 seconds
East, a distance of 183.00 feet the point of beginning.

Containing 39,031 sq. ft.

Together with access rights over a portion of Lot 37.01, Block 117 as set forth in
easement filed in Deed Book OR-9037, Page 5450 et seq.

Being known and designated as Lot 36.01 in Block 37.01 as depicted on map entitled
"Minor Subdivision, Lots 36 & 37, Block 117, Borough of Tinton Falls, Monmouth
County, New Jersey" which map was filed in the Monmouth County Clerk's office on
September 3, 2013 as Case No. 312-22.

Charles Surmonte P.E. & L.S.
N.J. License No. 35885

Loan No: ~~████████~~

**MORGAGE**
**(Continued)**

Page 2

---

agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

Rents. The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

THIS MORTGAGE dated June 23, 2014, is made and executed between George Sariotis, whose address is 1801 Pitney Street, Oakhurst, NJ 07755 (referred to below as "Grantor") and TWO RIVER COMMUNITY BANK, whose address is 1250 Highway 35 South, Middletown, NJ 07748 (referred to below as "Lender").

GRANT OF MORTGAGE. For valuable consideration, Grantor mortgages and conveys to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Monmouth County, State of New Jersey.

  See Schedule A-3, which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.

The Real Property or its address is commonly known as 1048 Wayside Road, Tinton Falls, NJ 07724. The Real Property tax identification number is Lot 36.01 Block 117.

CROSS-COLLATERALIZATION. In addition to the Note, this Mortgage secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS ALSO GIVEN TO SECURE ANY AND ALL OF GRANTOR'S OBLIGATIONS UNDER THAT CERTAIN CONSTRUCTION LOAN AGREEMENT BETWEEN GRANTOR AND LENDER OF EVEN DATE HEREWITH. ANY EVENT OF DEFAULT UNDER THE CONSTRUCTION LOAN AGREEMENT, OR ANY OF THE RELATED DOCUMENTS REFERRED TO THEREIN, SHALL ALSO BE AN EVENT OF DEFAULT UNDER THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

CONSTRUCTION MORTGAGE. This Mortgage is a "construction mortgage" for the purposes of Sections 9-334 and 2A-309 of the Uniform Commercial Code, as those sections have been adopted by the State of New Jersey.

POSSESSION AND MAINTENANCE OF THE PROPERTY. Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

  Possession and Use. Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

  Duty to Maintain. Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

  Compliance With Environmental Laws. Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

  Nuisance, Waste. Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

  Removal of Improvements. Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written

**MORGAGE**
**(Continued)**

Loan No: ~~1701010000~~                                                                                           Page 3

consent.  As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.**  Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.**  Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act.  Grantor may contest in good faith any law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized.  Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.**  Grantor agrees neither to abandon or leave unattended the Property.  Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**CONSTRUCTION LOAN.**  If some or all of the proceeds of the loan creating the Indebtedness are to be used to construct or complete construction of any Improvements on the Property, the Improvements shall be completed no later than the maturity date of the Note (or such earlier date as Lender may reasonably establish) and Grantor shall pay in full all costs and expenses in connection with the work.  Lender will disburse loan proceeds under such terms and conditions as Lender may deem reasonably necessary to insure that the interest created by this Mortgage shall have priority over all possible liens, including those of material suppliers and workmen.  Lender may require, among other things, that disbursement requests be supported by receipted bills, expense affidavits, waivers of liens, construction progress reports, and such other documentation as Lender may reasonably request.

**DUE ON SALE - CONSENT BY LENDER.**  Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property.  A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property.  However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by New Jersey law.

**TAXES AND LIENS.**  The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.**  Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property.  Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.**  Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized.  If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien.  In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property.  Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.**  Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.**  Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $50000.  Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such Improvements.

**No Claim for Credit for Taxes.**  Grantor shall not make deduction from or claim credit on the principal or interest secured by this Mortgage by reason of any governmental taxes, assessments or charges.  Grantor shall not claim any deduction from the taxable value of the Property by reason of this Mortgage.

**PROPERTY DAMAGE INSURANCE.**  The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.**  Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender.  Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies.  Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require.  Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender.  Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice.  Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person.  Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.**  Grantor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $10000.  Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty.  Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property.  If

| Loan No: ~~8701243000~~ | MORTGAGE<br>(Continued) | Page 4 |
|---|---|---|

Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will  (A)  be payable on demand;  (B)  be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either  (1)  the term of any applicable insurance policy; or  (2)  the remaining term of the Note; or  (C)  be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that:  (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and  (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies:  (1)  a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage;  (2)  a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage;  (3)  a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and  (4)  a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either  (1)  pays the tax before it becomes delinquent, or  (2)  contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**MORTGAGE**
**(Continued)**

Loan No: ~~0701273885~~                                                                                                      Page 5

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

    **Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1)  Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2)  the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

    **Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

    **Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

    **Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

    **Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

    **Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

    **Default in Favor of Third Parties.** Should Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's ability to repay the Indebtedness or Grantor's ability to perform Grantor's obligations under this Mortgage or any of the Related Documents.

    **False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

    **Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any Related Documents to create a valid and perfected security interest or lien) at any time and for any reason.

    **Death or Insolvency.** The death of Grantor, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

    **Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

    **Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

    **Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

    **Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

    **Insecurity.** Lender in good faith believes itself insecure.

    **Right to Cure.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Mortgage within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Grantor demanding cure of such default: (1)  cures the default within thirty (30) days; or (2)  if the cure requires more than thirty (30) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

    **Accelerate Indebtedness.** Lender shall have the right at its option, subject to any notice or right to cure requirements that may be applicable, to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Grantor would be

**MORTGAGE**
(Continued)

Loan No: ~~0701210009~~                                                                    Page 6

required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Lender in Possession.** Upon acceleration of the indebtedness or abandonment of the Property, Lender (in person, by agent or by judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the Property and to collect the Rents, including those past due. Any Rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of Rents, including but not limited to receiver's fees, premiums on the receiver's bonds and reasonable attorneys' fees and then to the other indebtedness secured by this Mortgage.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Nonjudicial Sale.** If permitted by applicable law, Lender may foreclose Grantor's interest in all or in any part of the Personal Property or the Real Property by non-judicial sale.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**CLARIFICATION OF MAXIMUM LIEN.** "The lien of this mortgage shall not exceed at any one time the principal balance, together with any and all accrued but unpaid interest, tax, assessment, water rent and other charges, insurance premiums, attorneys fees and all other expenses and payments required to be made by the mortgagor as described in this mortgage.".

**FIRST PURCHASE MONEY MORTGAGE.** Being the same premises conveyed to the Borrowers herein by Deed dated June 23, 2014, and about to be recorded simultaneously with this Mortgage. This Mortgage shall be considered a First Purchase Money Mortgage and given to secure the greater portion of the consideration set forth in such Deed.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

Loan No: ~~07~~ ~~~~ ~~~~            **MORTGAGE**
                                   **(Continued)**                                    Page 7
_____

**Governing Law.** This Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of New Jersey without regard to its conflicts of law provisions. This Mortgage has been accepted by Lender in the State of New Jersey.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Non-Liability of Lender.** The relationship between Grantor and Lender created by this Mortgage is strictly a debtor and creditor relationship and not fiduciary in nature, nor is the relationship to be construed as creating any partnership or joint venture between Lender and Grantor.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waive Jury.** All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS. GRANTOR ACKNOWLEDGES RECEIPT, WITHOUT CHARGE, OF A TRUE AND CORRECT COPY OF THIS MORTGAGE.

GRANTOR:

X _____
George Sariotis

_____

### INDIVIDUAL ACKNOWLEDGMENT

STATE OF _New Jersey_                    )
                                         ) SS
COUNTY OF _Monmouth_                     )

BE IT REMEMBERED that on this _____ day of _____ 20 _____, before me, the undersigned authority, personally appeared George Sariotis who, I am satisfied, is the person named in the foregoing instrument, and I having first made known to him or her the contents thereof, he or she acknowledged that he or she signed, sealed and delivered the same as his or her voluntary act and deed. All of which is hereby certified.

_____
[Notary Public]

PETER S. FALVO, JR.
Attorney At Law, State of N.J.

_____
LASER PRO Lending, Ver. 14.2.0.021  Copr. D+H USA Corporation 1997, 2014.   All Rights Reserved.   - NJ  g:\CFI\LPL\G03.FC  TR-7125
PR-8

# EXHIBIT C

CERTIFIED TO BE A TRUE COPY

BY: _____

A NEW JERSEY ATTORNEY AT LAW



## PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $300,000.00 | 11-21-2014 | 02-21-2020 | ▓▓▓▓ | RC C/C2b / 111 | ▓▓▓▓ | ▓▓▓ | ▓▓▓ |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

Borrower:    G C S Contractors Corp
             1801 Pitney Street
             Oakhurst, NJ  07755

Lender:    TWO RIVER COMMUNITY BANK
           Middletown
           1250 Highway 35 South
           Middletown, NJ  07748
           (732) 706-9009

**Principal Amount:  $300,000.00**                                    **Date of Note:  November 21, 2014**

**PROMISE TO PAY.**  G C S Contractors Corp ("Borrower") promises to pay to TWO RIVER COMMUNITY BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of Three Hundred Thousand & 00/100 Dollars ($300,000.00), together with interest on the unpaid principal balance from November 21, 2014, until paid in full, together with all applicable fees and expenses.

**PAYMENT.**  Borrower will pay this loan in accordance with the following payment schedule, which calculates interest on the unpaid principal balances as described in the "INTEREST CALCULATION METHOD" paragraph using the interest rates described in this paragraph:  3 monthly consecutive interest payments, beginning December 21, 2014, with interest calculated on the unpaid principal balances using an interest rate of 4.750% per annum based on a year of 360 days; 59 monthly consecutive principal and interest payments of $5,635.66 each, beginning March 21, 2015, with interest calculated on the unpaid principal balances using an interest rate of 4.750% per annum based on a year of 360 days; and one principal and interest payment of $5,635.91 on February 21, 2020, with interest calculated on the unpaid principal balances using an interest rate of 4.750% per annum based on a year of 360 days.  This estimated final payment is based on the assumption that all payments will be made exactly as scheduled; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note.  Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges.  Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.**  Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.  All interest payable under this Note is computed using this method.

**PREPAYMENT; MINIMUM INTEREST CHARGE.**  In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a minimum interest charge of $5.00.  Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due.  Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule.  Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments.  Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language.  If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender.  All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to:  TWO RIVER COMMUNITY BANK, Middletown, 1250 Highway 35 South, Middletown, NJ  07748.

**LATE CHARGE.**  If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment.  This late charge shall be paid to Lender by Borrower for the purpose of defraying the expense incident to the handling of the delinquent payment.

**INTEREST AFTER DEFAULT.**  Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by adding an additional 5.000 percentage point margin ("Default Rate Margin").  The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default.  After maturity, or after this Note would have matured had there been no default, the Default Rate Margin will continue to apply to the final interest rate described in this Note.  However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.**  Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.**  Borrower fails to make any payment when due under this Note.

**Other Defaults.**  Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default In Favor of Third Parties.**  Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**Environmental Default.**  Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any loan.

**False Statements.**  Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.**  The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.**  Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan.

**PROMISSORY NOTE**
(Continued)

Loan No: [REDACTED]                                                                                     Page 2

This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity of reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

Events Affecting Guarantor. Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the Indebtedness evidenced by this Note.

Change In Ownership. Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

Adverse Change. A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

Insecurity. Lender in good faith believes itself insecure.

Cure Provisions. If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within thirty (30) days; or (2) if the cure requires more than thirty (30) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of New Jersey without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of New Jersey.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $32.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by UCC-1 financing statement on all business assets, including but not limited to any equipment and/or vehicles purchased; a valid third mortgage lien on 61 Redwood Drive a/k/a Lot 14 in Block 150.06, Township of Ocean, County of Monmouth, New Jersey; Assignment of leases and rents; a valid second mortgage lien on Wayside Road a/k/a Lot 36.01 in Block 117, Borough of Tinton Falls, County of Monmouth, New Jersey; Assignment of leases and rents; a valid fourth mortgage lien on 1801 Pitney Street a/k/a Lot 105 in Block 33, Township of Ocean, County of Monmouth, New Jersey; Assignment of leases and rents;.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

G C S CONTRACTORS CORP

By: _____        By: _____
George Sariotis, President of G C S Contractors        Cindle Sariotis, Secretary of G C S Contractors Corp
Corp

EXHIBIT D

RECORDATION REQUESTED BY:
  TWO RIVER COMMUNITY BANK
  Middletown
  1250 Highway 35 South
  Middletown, NJ  07748

WHEN RECORDED MAIL TO:
  TWO RIVER COMMUNITY BANK
  Corporate Headquarters
  766 Shrewsbury Ave.
  Tinton Falls , NJ  07724

SEND TAX NOTICES TO:
  George Sariotis
  1801 Pitney Street
  Oakhurst, NJ  07755

                                                          SPACE ABOVE THIS LINE IS FOR RECORDER'S USE ONLY

This Mortgage prepared by: X _____
                              Name of Signer:  Lorraine Hotaling, Loan Operations
                                               TWO RIVER COMMUNITY BANK

## MORTGAGE

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

  **Borrower.** The word "Borrower" means G C S Contractors Corp and includes all co-signers and co-makers signing the Note and all their successors and assigns.

  **Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

  **Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., the New Jersey Industrial Site Recovery Act, NJSA Section 13:1K-6 ("ISRA"), the New Jersey Spill Compensation and Control Act, NJSA 58:10-23.11, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

  **Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

  **Grantor.** The word "Grantor" means George Sariotis.

  **Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

  **Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

  **Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

  **Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

  **Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

  **Lender.** The word "Lender" means TWO RIVER COMMUNITY BANK, its successors and assigns.

  **Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

  **Note.** The word "Note" means the promissory note dated November 21, 2014, **in the original principal amount of $300,000.00** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

  **Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

  **Property.** The word "Property" means collectively the Real Property and the Personal Property.

  **Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

  **Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental

Loan No: ~~0133317791~~

## MORTGAGE
## (Continued)

Page 2

agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the indebtedness.

Rents. The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

THIS MORTGAGE dated November 21, 2014, is made and executed between George Sariotis, whose address is 1801 Pitney Street, Oakhurst, NJ 07755 (referred to below as "Grantor") and TWO RIVER COMMUNITY BANK, whose address is 1250 Highway 35 South, Middletown, NJ 07748 (referred to below as "Lender").

GRANT OF MORTGAGE. For valuable consideration, Grantor mortgages and conveys to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Monmouth County, State of New Jersey:

Wayside Road a/k/a Lot 36.01 in Block 117, Borough of Tinton Falls, County of Monmouth, New Jersey 07724

The Real Property or its address is commonly known as  Wayside Road, Tinton Falls, NJ  07724.  The Real Property tax identification number is Lot 36.01 Block 117.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property.  In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS AND  (B)  PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THIS MORTGAGE.  THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

GRANTOR'S WAIVERS.  Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

GRANTOR'S REPRESENTATIONS AND WARRANTIES.  Grantor warrants that:  (a) this Mortgage is executed at Borrower's request and not at the request of Lender;  (b) Grantor has the full power, right, and authority to enter into this Mortgage and to hypothecate the Property;  (c) the provisions of this Mortgage do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor;  (d) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and  (e) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

PAYMENT AND PERFORMANCE.  Except as otherwise provided in this Mortgage, Borrower shall pay to Lender all indebtedness secured by this Mortgage as it becomes due, and Borrower and Grantor shall strictly perform all Borrower's and Grantor's obligations under this Mortgage.

POSSESSION AND MAINTENANCE OF THE PROPERTY.  Borrower and Grantor agree that Borrower's and Grantor's possession and use of the Property shall be governed by the following provisions:

Possession and Use.  Until the occurrence of an Event of Default, Grantor may  (1)  remain in possession and control of the Property;  (2) use, operate or manage the Property; and  (3)  collect the Rents from the Property.

Duty to Maintain.  Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

Compliance With Environmental Laws.  Grantor represents and warrants to Lender that:  (1)  During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property;  (2)  Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing,  (a)  any breach or violation of any Environmental Laws,  (b)  any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or  (c)  any actual or threatened litigation or claims of any kind by any person relating to such matters; and  (3)  Except as previously disclosed to and acknowledged by Lender in writing,  (a)  neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and  (b)  any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws.  Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage.  Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person.  The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances.  Grantor hereby  (1)  releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and  (2)  agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor.  The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

Nuisance, Waste.  Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property.  Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

Removal of Improvements.  Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent.  As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

Lender's Right to Enter.  Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend

Loan No: 0100217794
### MORGAGE
**MORTGAGE**
(Continued)

Page 3

to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by New Jersey law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage.

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $50000. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**No Claim for Credit for Taxes.** Borrower or Grantor shall not make deduction from or claim credit on the principal or interest secured by this Mortgage by reason of any governmental taxes, assessments or charges. Borrower or Grantor shall not claim any deduction from the taxable value of the Property by reason of this Mortgage.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $10000. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay

when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will  (A)  be payable on demand;  (B)  be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either  (1)  the term of any applicable insurance policy; or  (2)  the remaining term of the Note; or  (C)  be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.**  The following provisions relating to ownership of the Property are a part of this Mortgage:

Title.  Grantor warrants that:  (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and  (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

Defense of Title.  Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons.  In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense.  Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

Compliance With Laws.  Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

Survival of Representations and Warranties.  All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**CONDEMNATION.**  The following provisions relating to condemnation proceedings are a part of this Mortgage:

Proceedings.  If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award.  Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

Application of Net Proceeds.  If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.**  The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

Current Taxes, Fees and Charges.  Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property.  Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

Taxes.  The following shall constitute taxes to which this section applies:  (1)  a specific tax upon this type of Mortgage or upon all or any part of the  Indebtedness secured by this Mortgage;  (2)  a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage;  (3)  a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and  (4)  a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

Subsequent Taxes.  If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either  (1)  pays the tax before it becomes delinquent, or  (2)  contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.**  The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

Security Agreement.  This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

Security Interest.  Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property.  In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement.  Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest.  Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property.  Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

Addresses.  The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.**  The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

Further Assurances.  At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages,

Loan No: ~~8163217701~~

**MORTGAGE**
**(Continued)**

Page 5

deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-In-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Borrower and Grantor pay all the Indebtedness when due, and Grantor otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's ability to repay the Indebtedness or Borrower's or Grantor's ability to perform their respective obligations under this Mortgage or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any Related Documents to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution or termination of Borrower's or Grantor's existence as a going business, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Borrower or Grantor under the terms of any other agreement between Borrower or Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower or Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Mortgage within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within thirty (30) days; or (2) if the cure requires more than thirty (30) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option, subject to any notice or right to cure requirements that may be applicable, to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Borrower would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Lender in Possession.** Upon acceleration of the Indebtedness or abandonment of the Property, Lender (in person, by agent or by judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the Property and to collect the Rents, including those past due. Any Rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of Rents, including but not limited to receiver's fees, premiums on the receiver's bonds and reasonable attorneys' fees and then to the other Indebtedness secured by this Mortgage.

**MORTGAGE**
**(Continued)**

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Nonjudicial Sale.** If permitted by applicable law, Lender may foreclose Grantor's interest in all or in any part of the Personal Property or the Real Property by non-judicial sale.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Borrower or Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Borrower and Grantor hereby waive any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or Borrower and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**CLARIFICATION OF MAXIMUM LIEN.** "The lien of this mortgage shall not exceed at any one time the principal balance, together with any and all accrued but unpaid interest, tax, assessment, water rent and other charges, insurance premiums, attorneys fees and all other expenses and payments required to be made by the mortgagor as described in this mortgage.".

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** This Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of New Jersey without regard to its conflicts of law provisions. This Mortgage has been accepted by Lender in the State of New Jersey.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Grantor signing below is responsible for all obligations in this Mortgage.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance

Loan No: ~~8103217794~~

## MORTGAGE
### (Continued)

Page 7

shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Non-Liability of Lender.** The relationship between Borrower and Grantor and Lender created by this Mortgage is strictly a debtor and creditor relationship and not fiduciary in nature, nor is the relationship to be construed as creating any partnership or joint venture between Lender and Borrower and Grantor.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waive Jury.** All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS. GRANTOR ACKNOWLEDGES RECEIPT, WITHOUT CHARGE, OF A TRUE AND CORRECT COPY OF THIS MORTGAGE.

GRANTOR:

X _____
George Sariotis

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _New Jersey_ )
) SS
COUNTY OF _Monmouth_ )

BE IT REMEMBERED that on this ____21____ day of ____November____, 20__14__, before me, the undersigned authority, personally appeared George Sariotis who, I am satisfied, is the person named in the foregoing Instrument, and I having first made known to him or her the contents thereof, he or she acknowledged that he or she signed, sealed and delivered the same as his or her voluntary act and deed. All of which is hereby certified.

[Notary Public] _____

GWENDALYN M. ROGERS
ID# 2297357
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires August 6, ...

LaserPro, Ver. 14.3.10.003 Copr. D+H USA Corporation 1997, 2014.    All Rights Reserved.    - NJ ...

EXHIBIT E

**MEYNER AND LANDIS LLP**
Matthew P. Dolan, Esq.
Filing Attorney No.: 078222013
One Gateway Center, Suite 2500
Newark, New Jersey 07102
Telephone:  (973) 602-3478
Facsimile:  (973) 624-0356
Attorneys for Plaintiff
*Two River Community Bank*

SUPERIOR COURT OF NEW JERSEY
CHANCERY    DIVISION:    GENERAL
EQUITY PART: MONMOUTH COUNTY
DOCKET NO.: F-026418-17

TWO RIVER COMMUNITY BANK,

Plaintiff,

v.

GEORGE SARIOTIS, ALUMA SYSTEMS
CONCRETE CONSTRUCTION, LLC;
DREYERS LUMBER & HARDWARE, INC.
JAEGER LUMBER & SUPPLY CO., INC.,
JOSEPH FAZIO WALL, LLC, AARON AND
COMPANY;

Defendants.

*Civil Action*

***FINAL JUDGMENT OF
FORECLOSURE***

Upon application of the plaintiff, Two River Community Bank ("**TRCB**") to foreclose a

first and second mortgage held by TRCB (the "**Mortgages**") covering certain mortgaged

premises located at and being in the Borough of Tinton Falls, Monmouth County, Lot 36.01,

Block 117 on the tax map of the Borough of Tinton Falls, Monmouth County, New Jersey,

commonly known as 1046 Wayside Road, Tinton Falls, NJ 07724 (hereinafter referred to as the

"**Mortgaged Premises**");

And, it appearing that the Summons and Complaint in Foreclosure have been duly

issued and served upon the Defendants George Sariotis (the "**Borrower**"), Aluma Systems

Concrete Construction LLC, Dreyers Lumber & Hardware, Inc., Jaeger Lumber & Supply Co.,

Inc., Joseph Fazio Wall, LLC and Aaron and Company (collectively the "**Subordinate Lienholders**") (the Borrower and the Subordinate Lienholders are sometimes hereinafter collectively referred to as the "**Defendants**"), who have failed to file an answer or otherwise appear in this action and Defendants default having been duly entered by the Clerk of this Court;

And it further appearing that true copies of the original notes and mortgages (certified to be true copies pursuant to the requirements of New Jersey Court Rule 4:64-2) having been presented and marked as exhibits by the Court, and proofs having been submitted of the amounts due on the Mortgages;

And, it appearing from the Certification filed herein that there is due to TRCB the total sum of $_**185,520.48**_____ on its first mortgage described in the Complaint; and sufficient cause appearing;

And, it appearing from the Certification filed herein that there is due to TRCB the total sum of $_**296,191.33**_____ on its second mortgage described in the Complaint; and sufficient cause appearing

It is on this ___19___ day of ___DECEMBER_____, 2018,

1.       **ORDERED AND ADJUDGED** that TRCB is entitled, on its first mortgage, to have the sum of $_185,520.48_____ together with lawful interest thereon computed from and including November 13, 2018, together with taxed costs of this suit, including counsel fees of $_2486.56_____, raised and paid out of the Mortgaged Premises described in the Complaint; and it is further

2

2.      **ORDERED AND ADJUDGED** that TRCB is entitled, on its second mortgage, to have the sum of $_296,191.33_____ together with lawful interest thereon computed from and including November 13, 2018, together with taxed costs of this suit, including counsel fees of $2483.56_____, raised and paid out of the Mortgaged Premises described in the Complaint; and it is further

3.      **ORDERED AND ADJUDGED** that TRCB or purchaser at sale duly recover against the Defendants and all parties holding under the said defendant the possession of the Mortgaged Premises for purchaser at sale and that a writ of possession issue to the Sheriff, with all appurtenances, as described in TRCB's first and second mortgage; and it is further

4.      **ORDERED AND ADJUDGED** that the Mortgaged Premises described in the First Count of the Complaint be sold and raised to satisfy the several sums of money due (a) in the first place to TRCB, the said sum together with lawful interest thereon to be computed from and including November 13, 2018; that an execution for that purpose be duly issued out of the Court directed to the Sheriff of the County of Monmouth, commanding said Sheriff to make the sale according to law of the Mortgaged Premises described in the First Count of the Complaint in Foreclosure, and out of the monies arising from said sale that said Sheriff pay Borrower's debts as described in the First Count of the Complaint, with interest thereon and costs as aforesaid, to TRCB or their attorney, in case there is a surplus remaining after said sale, that such surplus be brought into this Court to abide the further order of this Court; and that the aforesaid Sheriff make his report of the aforementioned sale without delay as required by the Rules of this Court; and it is further

3

5.      **ORDERED AND ADJUDGED** that the Mortgaged Premises described in the Second Count of the Complaint be sold and raised to satisfy the several sums of money due (a) in the second place to TRCB, the said sum together with lawful interest thereon to be computed from and including November 13, 2018; that an execution for that purpose be duly issued out of the Court directed to the Sheriff of the County of Monmouth, commanding said Sheriff to make the sale according to law of the Mortgaged Premises described in the Second Count of the Complaint in Foreclosure, and out of the monies arising from said sale that said Sheriff pay Borrower's debts as described in the Second Count of the Complaint, with interest thereon and costs as aforesaid, to TRCB or their attorney, in case there is a surplus remaining after said sale, that such surplus be brought into this Court to abide the further order of this Court; and that the aforesaid Sheriff make his report of the aforementioned sale without delay as required by the Rules of this Court; and it is further

6.      **ORDERED AND ADJUDGED** that the Defendants in this case, to wit, George Sariotis, Aluma Systems Concrete Construction LLC, Dreyers Lumber & Hardware, Inc., Jaeger Lumber & Supply Co., Inc., Joseph Fazio Wall, LLC and Aaron and Company stand absolutely debarred and foreclosed of and from all equity of redemption of, in, and to the Mortgaged Premises when sold as aforesaid by virtue of this Final Judgment except as provided by 28 U.S.C §2410; and it is further

4

7.      **ORDERED AND ADJUDGED** This judgment shall not affect the rights of any

person protected by the New Jersey Tenant Anti-Eviction Act, <u>N.J.S.A.</u> 2A:18-61.1, <u>et seq.</u>

*/s/ Katie A. Gummer, P.J.Ch.*
Hon. Katie A. Gummer, P.J. Ch.

Respectfully Recommended
R.1:34-6 Office of Foreclosure

# **EXHIBIT 1**

6

## Charles Surmonte P.E. & L.S.

Professional Engineer and Land Surveyor
301 Main Street, Allenhurst, NJ 07711
Phone 732-660-0606 Fax 732-660-0404

28 March 2014

Description of Property known as Lot 36.01, Block 117, situated in the Borough of Tinton Falls, Monmouth County, New Jersey

Beginning at a point, said point being in the easterly line of Wayside Road, aka County Route 39 (as widened to 30.0 feet from centerline thereof), said point being at a concrete monument set at its intersection with the common boundary line of proposed Lots 36.01 & 37.01, Block 117; thence proceeding,

1. Along the southerly line of Lot 37.01, Block 117, North 83 degrees 41 minutes 00 seconds East, a distance of 266.02 feet to a point marked by a capped pin found; thence,

2. Along the westerly line of Lot 37.01, Block 117, South 06 degrees 19 minutes 00 seconds East, a distance of 140.33 feet to a point marked by a capped pin found; thence;

3. Along the northerly line of Lots 34.01 & 35, Block 117, South 83 degrees 41 minutes 00 seconds West, a distance of 290.26 feet to a point in the easterly line of Wayside Road (30' from centerline); thence,

4. Along said easterly line of Wayside Road, North 03 degrees 29 minutes 00 seconds East, a distance of 138.08 feet the point of beginning.

Containing 39,034 sq. ft.

Together with access rights over a portion of Lot 37.01, Block 117 as set forth in easement filed in Deed Book OR-9030, Page 9450 et seq.

Being known and designated as Lot 36.01 in Block 37.01 as depicted on map entitled "Minor Subdivision, Lots 36 & 37, Block 117, Borough of Tinton Falls, Monmouth County, New Jersey" which map was filed in the Monmouth County Clerk's office on September 3, 2013 as Case No. 312-22.

Charles Surmonte P.E. & L.S.
N.J. License No. 35885

Station: View25 - 07/07/2017  2:17:10 PM                MONMOUTH COUNTY                Inst.# 2014080691 - Page 2

7