# EXHIBIT O

**MEYNER AND LANDIS LLP**
Matthew P. Dolan, Esq.
Filing Attorney No.: 078222013
One Gateway Center, Suite 2500
Newark, New Jersey 07102
Phone: (973) 602-3478
Fax: (973) 624-0356
Attorneys for Plaintiff
*Two River Community Bank*

SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION: GENERAL
EQUITY PART: MONMOUTH COUNTY
DOCKET NO.:

TWO RIVER COMMUNITY BANK,

      Plaintiff,

      v.

GEORGE SARIOTIS; CINDIE SARIOTIS
A/K/A CINDY SARIOTIS; ALUMA
SYSTEMS CONCRETE CONSTRUCTION,
LLC; DREYERS LUMBER & HARDWARE,
INC.; JAEGER LUMBER & SUPPLY CO,
INC.; JOSEPH FAZIO WALL, LLC;
AARON AND COMPANY; UNKNOWN
TENANTS/OCCUPANTS 1-10,

      Defendants.

*Civil Action*

***FORECLOSURE COMPLAINT***

Plaintiff Two River Community Bank, a banking association organized and existing under the laws of the State of New Jersey with a place of business at 766 Shrewsbury Avenue, Tinton Falls, NJ 07724 (hereinafter referred to as "**TRCB**"), by way of Complaint in Foreclosure says:

## FIRST COUNT
### (The Pitney Third Mortgage)

### The GCS LOC

1.      On or about December 6, 2011, TRCB extended a certain commercial line of credit to GCS Contracting Corp. ("**GCS**") in the face amount of $150,000 (the "**GCS LOC**") pursuant to a certain Business Loan Agreement of even date (the "**GCS LOC Agreement**").

2.      The GCS LOC Agreement provided, among other things, that it would apply to any extensions of the GCS LOC and that it should remain effective until all of GCS' loans in favor of TRCB have been paid in full.

3.      The extension of credit was evidenced by a certain Promissory Note in the face amount of $150,000 that was executed and delivered to TRCB by GCS on December 6, 2011 (the "**Initial GCS LOC Note**") with an initial maturity date of November 30, 2012 (the "**Initial GCS LOC Maturity Date**").

4.      Thereafter, the Initial GCS LOC Note was recast and renewed from time to time including: (i) a renewal on November 30, 2012 pursuant to a November 30, 2012 Promissory Note in the face amount of $150,000; (ii) a renewal on November 30, 2013 pursuant to a November 30, 2013 Promissory Note in the face amount of $150,000 executed and delivered by GCS to TRCB; (iii) a renewal on November 30, 2014 pursuant to a November 30, 2014 Promissory Note in the face amount of $150,000; (iv) a renewal on November 30, 2015 pursuant to a November 30, 2015 Promissory Note in the face amount of $150,000; and (v) a renewal on February 29, 2016 pursuant to a February 29, 2016 Promissory Note in the face amount of $150,000 (collectively the "**2012-2016 LOC Renewal Documents**").

2

5.      On February 28, 2017, TRCB renewed, extended and modified the GCS LOC pursuant to a February 28, 2017 Promissory Note (the "**Final GCS LOC Note**") (the Initial GCS LOC Note, the GCS LOC Loan Agreement, the 2012-2016 Renewal Documents, the Final GCS LOC Note and the Pitney Third Mortgage are hereinafter collectively referred to as the "**GCS LOC Documents**").

6.      The Final GCS LOC Note extended the maturity date for the GCS LOC to March 31, 2018 (the "**Final Expiration Date**") and reduced the available credit to $149,980.

7.      The Final GCS LOC Note also reflected changed payment terms. Pursuant to the Final GCS LOC Note, beginning March 31, 2017 GCS was required to make twelve principal payments of $1,000.00 each with a final principal and interest payment of $138,574.08.

8.      In addition, beginning March 31, 2017, GCS was required to pay regular monthly payments of accrued unpaid interest due as of each payment date with a final payment of all principal, accrued interest, fees and expenses due on March 31, 2018.

**The Terms of the GCS LOC**

9.      Pursuant to the GCS LOC Documents, interest was to be calculated at a variable rate based upon the Wall Street Journal Prime Rate, plus one percentage point (1%) per annum, with a minimum rate of five percent (5%).

10.     The GCS LOC Documents provide that if a payment under the LOC is late for ten days or more, GCS will be charged a late fee of five percent (5%) of the unpaid portion of the regularly scheduled payment.

11.     Pursuant to the GCS LOC Documents, Borrower agreed that "if any action or proceeding is commenced that would materially affect [TRCB's] interest in the Collateral [(as defined in the GCS LOC Documents)]…[TRCB] on Borrower's behalf may (but shall not be

3

obligated to) take any action that [TRCB] deems appropriate, including but not limited to discharging or paying all taxes, liens, security interest, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the [GCS LOC] Note from the date incurred or paid by [TRCB] to the date of repayment by [GCS]. All such expenses will become a part of the Indebtedness...."

12.    Upon an event of a default, GCS agreed that TRCB could accelerate the indebtedness outstanding and all indebtedness under the GCS LOC would then become immediately due and payable.

13.    Upon an event of default, the GCS LOC Documents provide that the interest rate shall be increased by an additional five percentage points (5%) above the rate that would have applied had there been no default.

14.    Pursuant to the GCS LOC Documents, TRCB may also collect reasonable attorneys' fees and expenses incurred in collecting any amounts due under the GCS LOC.

**GCS' Default under the GCS LOC Documents**

15.    GCS is in default under the GCS LOC Documents for failing to make timely monthly payments as required under the GCS LOC Documents as of March 31, 2017 and continuing each and every month thereafter (the "**GCS LOC Stated Default**").

16.    By letter dated June 27, 2017, TRCB declared GCS in default, accelerated the outstanding indebtedness and demanded immediate payment in full of all outstanding indebtedness under the GCS LOC from GCS.

4

17.    Despite demand for payment by TRCB, GCS failed and refused to pay the amounts due. As a result, GCS remains in default under the terms of the GCS LOC Documents.

**The Pitney Third Mortgage**

18.    To secure payment of the amounts due under the GCS LOC, George Sariotis ("**G. Sariotis**") and his wife, Cindie Sariotis a/k/a Cindy Sariotis ("**C. Sariotis**") (G. Sariotis and C. Sariotis are sometimes hereinafter collectively referred to as the "**Mortgagors**") executed and delivered to TRCB a third Mortgage in the original principal amount of $150,000.00 (the "**Pitney Third Mortgage**") dated December 6, 2011 covering real property known as Lot 105, Block 33 on the tax map of the Township of Ocean, Monmouth County, New Jersey, commonly known as 1801 Pitney Street, Ocean Township, New Jersey 07755 and more particularly described in **Exhibit "1"** attached hereto (the "**Mortgaged Premises**").

19.    The Pitney Third Mortgage was duly recorded in the Monmouth County Clerk's Office as Instrument Number 2011116596 in Mortgage Book 8923, Page 631, et seq. on December 19, 2011.

20.    The Pitney Third Mortgage is not a purchase money Mortgage.

21.    Pursuant to the Pitney Third Mortgage, Mortgagors mortgaged and conveyed all of their right, title and interest in and to the Mortgaged Premises to TRCB.

22.    In addition to securing all the indebtedness arising under the GCS LOC, the Pitney Third Mortgage also contained a cross-collateralization provision whereby the Mortgagors agreed that the Mortgage shall also secure "all obligations, debts and liabilities, plus interest thereon, of either [Mortgagors] or Borrower to [TRCB]...."

23.    Pursuant to the terms of the Pitney Third Mortgage, TRCB has the right, but not the obligation, to pay insurance premiums for the Mortgaged Premises, real estate taxes and to

5

make other advances to protect the security of the Pitney Third Mortgage. All such sums advanced shall become a part of the Indebtedness (as defined in the GCS LOC Documents) and at TRCB's option will be payable on demand, added to the balance of the GCS LOC Note or treated as a balloon payment due at maturity.

24.    The Pitney Third Mortgage provides that a default will occur if payment in full is not made when immediately due.

25.    Upon default TRCB may, among other things, declare the Indebtedness immediately due and payable, and proceed to foreclose on the Mortgaged Premises.

26.    As aforementioned, GCS is in default under the GCS LOC Documents by reason of the GCS LOC Stated Default.

27.    By letter dated June 27, 2017, TRCB declared GCS in default and demanded immediate payment in full of all outstanding indebtedness under the GCS LOC from GCS.

28.    Despite demand for payment by TRCB, GCS failed and refused to pay the amounts due.

29.    As of and including October 17, 2017 the total principal amount of $149,980.00 was due on the GCS LOC plus accrued interest, processing fees, a Mortgage/UCC cancellation fee, appraisal fees of $1,150.00 and late charges.

30.    Also due and owing are legal fees, collection costs, default interest and mortgage/insurance advances as allowed by the GCS LOC Documents and by law.

**Fair Foreclosure Act Compliance**

31.    On July 27, 2017, TRCB mailed the Mortgagors a Notice of Intention to Foreclose on the Mortgaged Premises due to the GCS LOC Stated Default (the "**GCS LOC**

6

NOI") and advised the Mortgagors of, among other things, their right to cure the GCS LOC Stated Default.

32. Mortgagors have failed to cure the GCS LOC Stated Default within thirty days of TRCB mailing the GCS LOC NOI.

33. TRCB has complied with the provisions of the Fair Foreclosure Act, PL. 195, c. 244 and all other notices required by law.

34. As a result of the GCS LOC Stated Default and the Mortgagors failure to cure, TRCB is entitled to exercise its rights under the Pitney Third Mortgage, including the right to foreclose upon the Mortgaged Premises.

**Additional Party Defendants**

35. The following parties are made defendants to this action:

a. Aluma Systems Concrete Construction LLC is joined as a defendant by virtue of the following judgment: Judgment Number J-047159-2017 entered in the Superior Court of New Jersey, Monmouth County against GCS and G. Sariotis on March 28, 2017;

b. Dreyers Lumber & Hardware, Inc. is joined as a defendant by virtue of the following judgment: Judgment Number J-052327-2017 entered in the Superior Court of New Jersey, Morris County against GCS and G. Sariotis on April 11, 2017;

c. Jaeger Lumber & Supply Co., Inc. is joined as a defendant by virtue of the following judgment: Judgment Number DJ-052262-2015 entered in the Superior Court of New Jersey, Monmouth County, Special Civil Part against GCS and G. Sariotis on March 25, 2015;

d. Joseph Fazio Wall, LLC is joined as a defendant by virtue of the following judgment: Judgment Number DJ-137559-2015 entered in the Superior Court of New Jersey, Monmouth County, Special Civil Part against GCS and G. Sariotis on August 13, 2015.

7

e.      Aaron and Company is joined as a defendant by virtue of the following judgment: Judgment Number DJ-068752-2017 entered in the Superior Court of New Jersey, Monmouth County, Special Civil Part against GCS and G. Sariotis on May 18, 2017.

f.      Unknown Tenants/Occupants 1-10 are joined as defendants in the event there are leases or use and occupancy agreements or any other agreements whereby Defendants Unknown Tenants/Occupants 1-10 occupy the Mortgaged Premises.

**WHEREFORE**, plaintiff Two River Community Bank demands judgment for each and all of the following:

a)      fixing the amount due on the Pitney Third Mortgage;

b)      barring and foreclosing the defendants and each of them of all equity of redemption in and to the Mortgaged Premises;

c)      directing that TRCB be paid the amount due on the Pitney Third Mortgage, with interest, advances, costs of suit and attorneys' fees as allowed by the GCS LOC Documents, the Pitney Third Mortgage and by law;

d)      adjudging that the Mortgaged Premises be sold according to law to satisfy the amount due TRCB;

e)      appointing a receiver of the rents, issues and profits of the Mortgaged Premises;

f)      costs of suit; and

g)      such other relief as the Court deems appropriate.

### SECOND COUNT
**(Reformation of the Pitney Third Mortgage)**

36.     TRCB repeats the allegations of the First Count and makes the same a part hereof as if each and every allegation were herein repeated at length.

8

37.    As a result of a mutual mistake and error between the parties, although the correct street address, lot and block for the Mortgaged Premises was described in the Pitney Third Mortgage, it did not include a full description of the Mortgaged Premises.

38.    The property description of the Pitney Third Mortgage should have described the Mortgaged Premises as set forth in "**Exhibit 1**" attached hereto.

39.    TRCB did not discover this error until it obtained a title search in preparation for filing this Foreclosure Complaint.

40.    In order to make the Pitney Third Mortgage conform to the actual intentions of the parties, it is necessary that the Pitney Third Mortgage be reformed to include the property description, as set forth in Exhibit 1.

WHEREFORE, plaintiff Two River Community Bank, demands judgment:

a)    reforming the Pitney Third Mortgage by amending the Pitney Third Mortgage to include the property description set forth in Exhibit 1;

b)    declaring that an Order be recorded in the Monmouth County Clerk's Office reforming and correcting the Pitney Third Mortgage to reflect the correct description of the lands intended to be mortgaged, as set forth above in Exhibit 1; and

c)    for such other relief as this Court deems just and proper.

### THIRD COUNT
**(The Pitney Fourth Mortgage)**

**The G.Sariotis Loan**

41.    TRCB repeats the allegations of the First and Second Counts and makes the same a part hereof as if each and every allegation set forth was repeated herein at length.

9

42.     On or about June 23, 2014, TRCB extended a certain commercial term loan to G.Sariotis in the face amount of $150,000 (the "**G.Sariotis Loan**") pursuant to a certain Construction Loan Agreement of even date (the "**G.Sariotis Loan Agreement**").

43.     The G.Sariotis Loan Agreement provided, among other things, that it should apply to any extensions of the G.Sariotis Loan and remain effective until all of G.Sariotis' loans in favor of TRCB have been paid in full.

44.     The G.Sariotis Loan was evidenced by a certain Promissory Note in the face amount of $150,000 that was executed and delivered to TRCB by GCS on June 24, 2014 (the "**Initial G. Sariotis Note**") with an initial maturity date of June 23, 2015 (the "**Initial G.Sariotis Loan Maturity Date**").

45.     Thereafter, the Initial G.Sariotis Note was recast and extended from time to time including: (i) an extension on September 23, 2015 pursuant to a September 23, 2015 Promissory Note in the face amount of $149,956.43 executed and delivered by G.Sariotis to TRCB; (ii) an extension on December 23, 2015 pursuant to a December 23, 2015 Promissory Note in the face amount of $149,956.53 executed and delivered by G.Sariotis to TRCB; and (iii) an extension on March 23, 2016 pursuant to a March 23, 2016 Promissory Note in the face amount of $149,956.43 executed and delivered by G.Sariotis to TRCB (collectively the "**2015 – 2016 G.Sariotis Loan Extension Documents**").

46.     On March 23, 2017 the G.Sariotis Loan was extended a final time pursuant to March 23, 2017 Promissory Note, in the face amount of $149,956.43, executed and delivered by G.Sariotis to TRCB (the "**Final G.Sariotis Loan Note**") (the Initial G.Sariotis Note, the G.Sariotis Loan Agreement, the 2015-2016 G.Sariotis Loan Extension Documents and the

Final G.Sariotis Loan Note are hereinafter collectively referred to as the "**G.Sariotis Loan Documents**").

47.    Pursuant to the Final G.Sarioitis Loan Note, beginning March 23, 2017 G.Sariotis was required to make twelve principal payments of $1,000 each with a final payment of all principal, accrued interest, fees and expenses due on March 31, 2018 (the "**Final G.Sariotis Loan Maturity Date**").

48.    Pursuant to the G.Sariotis Loan Documents, interest was to be calculated at a variable rate based upon the Wall Street Journal Prime Rate with a minimum rate of five percent (5%).

49.    The G.Sariotis Loan Documents provide that if a payment under the G.Sariotis Loan is late for ten days or more, G.Sariotis will be charged a late fee of five percent (5%) of the unpaid portion of the regularly scheduled payment.

50.    Upon an event of a default, G.Sariotis agreed that TRCB could declare and accelerate the indebtedness outstanding and all indebtedness under the G.Sariotis Loan would then become immediately due and payable.

51.    Upon an event of default, the G.Sariotis Loan Documents provide that the interest rate shall be increased by an additional five percentage points (5%) above the rate that would have applied had there been no default.

52.    Pursuant to the G.Sariotis Loan Documents, TRCB may also collect reasonable attorneys' fees and expenses incurred in collecting any amounts due under the G.Sariotis Loan.

11

**The G.Sariotis Default under the G.Sariotis Loan Documents**

53.     G.Sariotis is in default under the G.Sariotis Loan Documents for failing to make timely monthly payments as required under the G.Sariotis Loan Documents as of April 23, 2017 and continuing each and every month thereafter (the "**G.Sariotis Loan Stated Default**").

54.     By letter dated June 27, 2017, TRCB declared G.Sariotis in default, accelerated the outstanding indebtedness and demanded immediate payment in full of all outstanding indebtedness under the G.Sariotis Loan from G.Sariotis.

55.     Despite demand for payment by TRCB, G.Sariotis failed and refused to pay the amounts due. As a result, G.Sariotis remains in default under the terms of the G.Sariotis Loan Documents.

**The Pitney Fourth Mortgage**

56.     To secure payment of the amounts due under the G.Sariotis Loan, Mortgagors executed and delivered to TRCB a Fourth Mortgage in the original principal amount of $150,000.00 (the "**Pitney Fourth Mortgage**") dated June 23, 2014 covering the Mortgaged Premises as more particularly described in **Exhibit "1"** attached hereto.

57.     The Pitney Fourth Mortgage was duly recorded in the Monmouth County Clerk's Office as Instrument Number 2014050593 in Mortgage Book 9071, Page 360, et seq. on June 30, 2014. The description attached hereto as **Exhibit "1"** is the same metes and bounds description contained in the recorded Pitney Fourth Mortgage.

58.     The Pitney Fourth Mortgage is not a purchase money Mortgage.

59.     Pursuant to the Pitney Fourth Mortgage, Mortgagors mortgaged and conveyed all of their right, title and interest in and to the Mortgaged Premises to TRCB.

12

60.    In addition to securing all the indebtedness arising under the G.Sariotis Loan, the Pitney Fourth Mortgage also contained a cross-collateralization provision whereby the Mortgagors agreed that the Mortgage shall also secure "all obligations, debts and liabilities, plus interest thereon, of either [Mortgagors] or Borrower to [TRCB]…."

61.    Pursuant to the terms of the Pitney Fourth Mortgage, TRCB has the right, but not the obligation, to pay insurance premiums for the Mortgaged Premises, real estate taxes and to make other advances to protect the security of the Pitney Fourth Mortgage. All such sums advanced shall become a part of the Indebtedness (as defined in the G.Sariotis Loan Documents) and at TRCB's option will be payable on demand, added to the balance of the Final G.Sariotis Loan Note or treated as a balloon payment due at maturity.

62.    The Pitney Fourth Mortgage provides that a default will occur if payment in full is not made when immediately due.

63.    Upon default TRCB may, among other things, declare the Indebtedness immediately due and payable, and proceed to foreclose on the Mortgaged Premises.

64.    As aforementioned, G.Sariotis is in default under the G.Sariotis Loan Documents by reason of the G.Sariotis Loan Stated Default.

65.    By letter dated June 27, 2017, TRCB declared G.Sariotis in default and demanded immediate payment in full of all outstanding indebtedness under the G.Sariotis Loan from G.Sariotis.

66.    Despite demand for payment by TRCB, G.Sariotis failed and refused to pay the amounts due.

13

67.    As of and including October 17, 2017 the total principal amount of $149,956.42 was due on the G.Sariotis Loan, plus accrued interest, processing fees, a Mortgage/UCC cancellation fee, appraisal fees and late charges.

68.    Also due and owing are legal fees, collection costs, default interest and mortgage/insurance advances as allowed by the G.Sariotis Loan Documents and by law.

**Fair Foreclosure Act Compliance**

69.    On July 27, 2017, TRCB mailed the Mortgagors a Notice of Intention to Foreclose on the Mortgaged Premises due to the G.Sariotis Loan Stated Default (the "**G.Sariotis Loan NOI**") and advised the Mortgagors of, among other things, their right to cure the G.Sariotis Loan Stated Default.

70.    Mortgagors have failed to cure the G.Sariotis Stated Default within thirty days of TRCB mailing the G.Sariotis Loan NOI.

71.    TRCB has complied with the provisions of the Fair Foreclosure Act, PL. 195, c. 244 and all other notices required by law.

72.    As a result of the G.Sariotis Loan Stated Default and the Mortgagors failure to cure, TRCB is entitled to exercise its rights under the Pitney Fourth Mortgage, including the right to foreclose upon the Mortgaged Premises.

**Additional Party Defendants**

73.    The following parties are made defendants to this action:

a.    Aluma Systems Concrete Construction LLC is joined as a defendant by virtue of the following judgment: Judgment Number J-047159-2017 entered in the Superior Court of New Jersey, Monmouth County against GCS and G. Sariotis on March 28, 2017;

14

b.      Dreyers Lumber & Hardware, Inc. is joined as a defendant by virtue of the following judgment: Judgment Number J-052327-2017 entered in the Superior Court of New Jersey, Morris County against GCS and G. Sariotis on April 11, 2017;

c.      Jaeger Lumber & Supply Co., Inc. is joined as a defendant by virtue of the following judgment: Judgment Number DJ-052262-2015 entered in the Superior Court of New Jersey, Monmouth County, Special Civil Part against GCS and G. Sariotis on March 25, 2015;

d.      Joseph Fazio Wall, LLC is joined as a defendant by virtue of the following judgment: Judgment Number DJ-137559-2015 entered in the Superior Court of New Jersey, Monmouth County, Special Civil Part against GCS and G. Sariotis on August 13, 2015.

e.      Aaron and Company is joined as a defendant by virtue of the following judgment: Judgment Number DJ-068752-2017 entered in the Superior Court of New Jersey, Monmouth County, Special Civil Part against GCS and G. Sariotis on May 18, 2017.

f.      Unknown Tenants/Occupants 1-10 are joined as defendants in the event there are leases or use and occupancy agreements or any other agreements whereby Defendants Unknown Tenants/Occupants 1-10 occupy the Mortgaged Premises.

**WHEREFORE**, plaintiff Two River Community Bank demands judgment for each and all of the following:

a)      fixing the amount due on the Pitney Fourth Mortgage;

b)      barring and foreclosing the defendants and each of them of all equity of redemption in and to the Mortgaged Premises;

c)      directing that TRCB be paid the amount due on the Pitney Fourth Mortgage, with interest, advances, costs of suit and attorneys' fees as allowed by the G.Sariotis Loan Documents, the Pitney Fourth Mortgage and by law;

15

d)      adjudging that the Mortgaged Premises be sold according to law to satisfy the amount due TRCB;

e)      appointing a receiver of the rents, issues and profits of the Mortgaged Premises;

f)      costs of suit; and

g)      such other relief as the Court deems appropriate.

### FOURTH COUNT
### (The Commercial Term Loan to GCS)

**The GCS Term Loan**

74.      TRCB repeats the allegations of the First through Third Counts and makes the same a part hereof as if each and every allegation were herein repeated at length.

75.      On or about November 21, 2014, TRCB extended a certain term loan to GCS in the face amount of $300,000 (the "**GCS Term Loan**") pursuant to a certain Business Loan Agreement of even date (the "**GCS Term Loan Agreement**").

76.      The GCS Term Loan Agreement provided, among other things, that it would apply to any extensions of the GCS Term Loan and that it should remain effective until all of GCS' loans in favor of TRCB have been paid in full.

77.      The extension of credit was evidenced by a certain Promissory Note in the face amount of $300,000 that was executed and delivered to TRCB by GCS on November 21, 2014 (the "**Initial GCS Term Loan Note**").

78.      Thereafter, the Initial GCS Term Loan Note was recast and extended from time to time including: (i) a change in terms pursuant to a certain October 20, 2015 Change in Terms Agreement; (ii) a change in terms pursuant to a certain February 17, 2016 Change in Terms Agreement; (iii) a change in terms pursuant to a certain August 19, 2016 Change in Terms Agreement; and (iv) a final change in terms pursuant to a March 3, 2017 Change in Terms

16

Agreement that, among other things, extended the final repayment date under the GCS Term Loan Note to March 31, 2018 (collectively the "**GCS Term Loan Note**") (the GCS Term Loan Agreement and GCS Term Loan Note are hereinafter collectively referred to as the "**GCS Term Loan Documents**").

79.     Pursuant to the GCS Term Loan Note, interest was to be calculated at a fixed rate of four and three-quarters percent (4.75%) per annum.

80.     The GCS Term Loan Note provides that if a payment under the GCS Term Loan is late for ten days or more, GCS will be charged a late fee of five percent (5%) of the unpaid portion of the regularly scheduled payment.

81.     Upon an event of a default, GCS agreed that TRCB could accelerate the indebtedness outstanding and all indebtedness under the GCS Term Loan would then become immediately due and payable.

82.     Upon an event of default, the GCS Term Loan Note provides that the interest rate shall be increased by an additional five percentage points (5%) above the rate that would have applied had there been no default.

83.     Pursuant to the GCS Term Loan Note, TRCB may also collect reasonable attorneys' fees and expenses incurred in collecting any amounts due under the GCS Term Loan.

**The GCS Default under the GCS Term Loan Documents**

84.     GCS is in default under the GCS Term Loan Documents for failing to make timely monthly payments as required under the GCS Term Loan (the "**GCS Term Loan Stated Default**") as of March 21, 2017 and continuing each and every month thereafter.

17

85.    By letter dated June 27, 2017, TRCB declared GCS in default, accelerated the
outstanding indebtedness and demanded immediate payment in full of all outstanding
indebtedness under the GCS Term Loan from GCS.

86.    Despite demand for payment by TRCB, GCS failed and refused to pay the
amounts due. As a result, GCS remains in default under the terms of the GCS Term Loan Note.

**The Pitney Fifth Mortgage**

87.    To secure payment of the amounts due under the GCS Term Loan, Mortgagors
executed and delivered to TRCB a Fifth Mortgage in the original principal amount of
$300,000.00 (the "**Pitney Fifth Mortgage**") dated November 21, 2014 covering the Mortgaged
Premises as more particularly described in **Exhibit "1"** attached hereto.

88.    The Pitney Fifth Mortgage was duly recorded in the Monmouth County Clerk's
Office as Instrument Number 2014103700 in Mortgage Book OR-9093, Page 7973, et seq. on
December 22, 2014.

89.    The Pitney Fifth Mortgage is not a purchase money Mortgage.

90.    Pursuant to the Pitney Fifth Mortgage, Mortgagors mortgaged and conveyed all
of their right, title and interest in and to the Mortgaged Premises to TRCB.

91.    In addition to securing all the indebtedness arising under the GCS Term Loan,
the Pitney Fifth Mortgage also contained a cross-collateralization provision whereby the
Mortgagors agreed that the Mortgage shall also secure "all obligations, debts and liabilities,
plus interest thereon, of either [Mortgagors] or Borrower to [TRCB]...."

92.    Pursuant to the terms of the Pitney Fifth Mortgage, TRCB has the right, but not
the obligation, to pay insurance premiums for the Mortgaged Premises, real estate taxes and to
make other advances to protect the security of the Pitney Fourth Mortgage. All such sums

18

advanced shall become a part of the Indebtedness (as defined in the GCS Term Loan Documents) and at TRCB's option will be payable on demand, added to the balance of the GCS Term Loan Note or treated as a balloon payment due at maturity.

93.     The Pitney Fifth Mortgage provides that a default will occur if payment in full is not made when immediately due.

94.     Upon default TRCB may, among other things, declare the Indebtedness immediately due and payable, and proceed to foreclose on the Mortgaged Premises.

95.     As aforementioned, GCS is in default under the GCS Term Loan Documents by reason of the GCS Term Loan Stated Default.

96.     By letter dated June 27, 2017, TRCB declared GCS in default and demanded immediate payment in full of all outstanding indebtedness under the GCS Term Loan from GCS.

97.     Despite demand for payment by TRCB, GCS failed and refused to pay the amounts due.

98.     As of and including October 17, 2017 the total principal amount of $254,716.52 was due on the GCS Term Loan, plus accrued interest, processing fees, a Mortgage/UCC Cancellation fee and late charges.

99.     Also due and owing are legal fees, collection costs, default interest and mortgage/insurance advances as allowed by the GCS Term Loan Documents and by law.

**Fair Foreclosure Act Compliance**

100.     On July 27, 2017, TRCB mailed the Mortgagors a Notice of Intention to Foreclose on the Mortgaged Premises due to the GCS Term Loan Stated Default (the "**GCS**

19

Term Loan NOI") and advised the Mortgagors of, among other things, their right to cure the

G.Sariotis Loan Stated Default.

    101.   Mortgagors have failed to cure the GCS Term Loan Stated Default within thirty

days of TRCB mailing the GCS Term Loan NOI.

    102.   TRCB has complied with the provisions of the Fair Foreclosure Act, PL. 195, c.

244 and all other notices required by law.

    103.   As a result of the GCS Term Loan Stated Default and the Mortgagors failure to

cure, TRCB is entitled to exercise its rights under the Pitney Fifth Mortgage, including the right

to foreclose upon the Mortgaged Premises.

**Additional Party Defendants**

    104.   The following parties are made defendants to this action:

    a.   Aluma Systems Concrete Construction LLC is joined as a defendant by virtue of

the following judgment: Judgment Number J-047159-2017 entered in the Superior Court of

New Jersey, Monmouth County against GCS and G. Sariotis on March 28, 2017;

    b.   Dreyers Lumber & Hardware, Inc. is joined as a defendant by virtue of the

following judgment: Judgment Number J-052327-2017 entered in the Superior Court of New

Jersey, Morris County against GCS and G. Sariotis on April 11, 2017;

    c.   Jaeger Lumber & Supply Co., Inc. is joined as a defendant by virtue of the

following judgment: Judgment Number DJ-052262-2015 entered in the Superior Court of New

Jersey, Monmouth County, Special Civil Part against GCS and G. Sariotis on March 25, 2015;

    d.   Joseph Fazio Wall, LLC is joined as a defendant by virtue of the following

judgment: Judgment Number DJ-137559-2015 entered in the Superior Court of New Jersey,

Monmouth County, Special Civil Part against GCS and G. Sariotis on August 13, 2015.

e.    Aaron and Company is joined as a defendant by virtue of the following judgment: Judgment Number DJ-068752-2017 entered in the Superior Court of New Jersey, Monmouth County, Special Civil Part against against GCS and G. Sariotis on May 18, 2017.

f.    Unknown Tenants/Occupants 1-10 are joined as defendants in the event there are leases or use and occupancy agreements or any other agreements whereby Defendants Unknown Tenants/Occupants 1-10 occupy the Mortgaged Premises.

**WHEREFORE**, plaintiff Two River Community Bank demands judgment for each and all of the following:

a)    fixing the amount due on the Pitney Fifth Mortgage;

b)    barring and foreclosing the defendants and each of them of all equity of redemption in and to the Mortgaged Premises;

c)    directing that TRCB be paid the amount due on the Pitney Fifth Mortgage, with interest, advances, costs of suit and attorneys' fees as allowed by the GCS Term Loan Documents, the Pitney Fifth Mortgage and by law;

d)    adjudging that the Mortgaged Premises be sold according to law to satisfy the amount due TRCB;

c)    appointing a receiver of the rents, issues and profits of the Mortgaged Premises;

f)    costs of suit; and

g)    such other relief as the Court deems appropriate.

### FIFTH COUNT
**(Reformation of the Pitney Fifth Mortgage)**

105.    TRCB repeats the allegations of the First through Fourth Counts and makes the same a part hereof as if each and every allegation were herein repeated at length.

21

106.    As a result of a mutual mistake and error between the parties, although the correct street address, lot and block for the Mortgaged Premises was described in the Pitney Fifth Mortgage, it did not include a full description of the Mortgaged Premises.

107.    The property description of the Pitney Fifth Mortgage should have described the Mortgaged Premises as set forth in **Exhibit "1"** attached hereto.

108.    TRCB did not discover this error until it obtained a title search in preparation for filing this Foreclosure Complaint.

109.    In order to make the Pitney Fifth Mortgage conform to the actual intentions of the parties, it is necessary that the Pitney Fifth Mortgage be reformed to include the property description, as set forth in Exhibit 1.

    **WHEREFORE**, plaintiff Two River Community Bank, demands judgment:

    a)    reforming the Pitney Fifth Mortgage by amending the Pitney Fifth Mortgage to include the property description set forth in Exhibit 1;

    b)    declaring that an Order be recorded in the Monmouth County Clerk's Office reforming and correcting the Pitney Fifth Mortgage to reflect the correct description of the lands intended to be mortgaged, as set forth above in Exhibit 1; and

    c)    for such other relief as this Court deems just and proper.

## SIXTH COUNT
### (Possession of the Mortgaged Premises)

110.    TRCB repeats the allegations of the First through Fifth Counts as if those allegations were set forth at length herein.

111.    By reason of the GCS LOC Stated Default, G.Sariotis Loan Stated Default, the GCS Term Loan Stated Default and the corresponding defaults under the Pitney Third

Mortgage, Pitney Fourth Mortgage and Pitney Fifth Mortgage, TRCB is entitled to possession of the Mortgaged Premises.

112.   TRCB has been deprived of possession of the Mortgaged Premises by G.Sariotis and C.Sariotis.

**WHEREFORE**, plaintiff Two River Community Bank demands judgment:

(a)   For possession of the Mortgaged Premises, on behalf of itself or the purchaser at Sheriff's Sale;

(b)   for damages for mesne profits; and

(c)   for such other costs of suit and attorneys' fees as allowed by the GCS LOC Loan Documents, G.Sariotis Loan Documents, the GCS Term Loan Documents, the Pitney Third Mortgage, Pitney Fourth Mortgage, Pitney Fifth Mortgage and by law.

**MEYNER AND LANDIS LLP**
Attorneys for Plaintiff
*Two River Community Bank*

By: _____

Matthew P. Dolan

Dated: November __, 2017

23

## CERTIFICATION

The undersigned attorney for plaintiff, Two River Community Bank, hereby certifies in accordance with Rule 4:5-1 that the within action is not the subject of any other action or pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated except for the following: (1) a separate collection action related to the GCS Term Loan, GCS LOC and G.Sariotis Loan currently pending the Superior Court of New Jersey, Monmouth County, bearing docket number L-2903-17; and (2) separate foreclosure actions to be filed by Plaintiff Two River Community Bank in Monmouth County related to parcels of property owned by the defendants that serve as additional security for indebtedness outstanding to TRCB, those parcels being located at: 61 Redwood Drive, Ocean, New Jersey 07712 (otherwise known as Block 150.06, Lot 14); and Wayside Road, Tinton Falls, New Jersey 07724 (otherwise known as Block 117, Lot 36.01). The undersigned further certifies that there are no other known parties that should be joined in this action at this time.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

MEYNER AND LANDIS LLP
Attorneys for Plaintiff
*Two River Community Bank*


By: _____
Matthew P. Dolan

Dated: November ___, 2017

24

## CERTIFICATION PURSUANT TO R. 1:38-7(C)

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

> **MEYNER AND LANDIS LLP**
> Attorneys for Plaintiff
> *Two River Community Bank*
>
> By: _____
>      Matthew P. Dolan, Esq.

DATED: November 2, 2017

SWC-F-026403-17   11/22/2017 3:03:34 PM Pg 27 of 31 Trans ID: CHC2017823538

# EXHIBIT 1

## Legal Description

**BEGINNING** at a point in the easterly line of Pitney Street, distant 200 fee southerly from the Southeast corner of Star Street and Pitney Street; and running

thence  (1)     South 88 degrees 45 minutes East 133.75 feet to a point;
thence  (2)     South 10 degrees 36 minutes 14 seconds West 145 feet, more or less, to the Centerline of a brook;

**BEGINNING** again at the **BEGINNING** point, and running

thence (3)     South 01 degree 15 minutes West 80 feet to a point  in the centerline of Centerline of a brook;
thence (4)     in the southeasterly direction along the Centerline of a brook 109 feet, more or less, to the end of the second course therein.

**BEING** commonly known as 1801 Pitney Street, Ocean Twsp., New Jersey.

**BEING** known as Lot 105, Block 33 on the tax map of Ocean Township.
Formerly known as lots 15-20 block 33D.11 on the tax map.

{42622 (00071902).1}

# EXHIBIT P

# REPORT ON TITLE

File No. **17DM-65629**

## SCHEDULE A

1.    Effective Date: **June 28, 2017**          Termination Date: <u>180</u> days
                                                                          after effective date

2.    Policy or Policies to be issued:

      (a) ALTA Owner's Policy (6-17-06)                          $          **tbd**
          Proposed Insured:

      (b) _____                                        $
          Proposed Insured:

3.    The estate or interest in the land described or referred to in this commitment is Fee Simple.

4.    Title to the Fee Simple estate or interest in the land is at the Effective Date vested in:

**GEORGE SARIOTIS AND CINDY SARIOTIS, HIS WIFE BY DEED FROM JOHN A. VILLAPIANO AND PATRICIA M. VILLAPIANO, HIS WIFE, DATED MARCH 23, 1988, RECORDED MARCH 25, 1988, IN THE CLERK'S OFFICE OF THE COUNTY OF MONMOUTH, NEW JERSEY, IN DEED BOOK 4839, PAGE 57.**

5.    The land referred to in this Commitment is described as follows:

      **For Information purposes only:**          **1801 PITNEY STREET**
                                        **TOWNSHIP OF OCEAN**
                                        **MONMOUTH COUNTY, NEW JERSEY**
                                        **TAX MAP BLOCK 33 LOT 105**

      **SEE CONTINUATION OF SCHEDULE A FOR LEGAL DESCRIPTION**

Countersigned:
**Prestige Title Agency, Inc.**
130 Pompton Avenue
Verona, NJ 07044

By: _____
       *Authorized Signatory*

ALTA Commitment 2006                                                                          NJRB 3-07
Schedule A                                                                                            Eff: 2/15/07
                                                                                                           RL

**SCHEDULE B - I**
*(Continued)*

File No. **17DM-65629**

14. CANCELLATION OR OTHER DISPOSITION OF THE MORTGAGE FROM GEORGE SARIOTIS AND CINDY SARIOTIS TO TWO RIVER COMMUNITY BANK, DATED APRIL 29, 2011, AND RECORDED MAY 9, 2011, IN MORTGAGE BOOK 8890, PAGE 4657, TO SECURE $210,000.00. ASSIGNED TO US BANK NATIONAL ASSOCIATION IN BOOK 9227 PAGE 735

15. CANCELLATION OR OTHER DISPOSITION OF THE MORTGAGE FROM GEORGE SARIOTIS AND CINDY SARIOTIS TO TWO RIVER COMMUNITY BANK, DATED DECEMBER 6, 2011, AND RECORDED DECEMBER 19, 2011, IN MORTGAGE BOOK 8923, PAGE 631, TO SECURE $150,000.00. ASSIGNMENT OF LEASES IN MBK 8923 PAGE 645

16. CANCELLATION OR OTHER DISPOSITION OF THE MORTGAGE FROM GEORGE SARIOTIS AND CINDY SARIOTIS TO TWO RIVER COMMUNITY BANK, DATED DECEMBER 6, 2011, AND RECORDED FEBRUARY 21, 2012, IN MORTGAGE BOOK 8933, PAGE 5972, TO SECURE $200,000.00.

17. CANCELLATION OR OTHER DISPOSITION OF THE MORTGAGE FROM GEORGE SARIOTIS AND CINDY SARIOTIS TO TWO RIVER COMMUNITY BANK, DATED JUNE 23, 2014, AND RECORDED JUNE 30, 2014, IN MORTGAGE BOOK 9071, PAGE 360, TO SECURE $150,000.00.

    ASSIGNMENT OF LEASES IN MBK 9071 PAGE 369

18. CANCELLATION OR OTHER DISPOSITION OF THE MORTGAGE FROM GEORGE SARIOTIS AND CINDY SARIOTIS TO TWO RIVER COMMUNITY BANK, DATED NOVEMBER 21, 2014, AND RECORDED DECEMBER 22, 2014, IN MORTGAGE BOOK 9093, PAGE 7973, TO SECURE $300,000.00. ASSIGNMENT OF LEASES IN MBK 9093 PAGE 8007