# Composite Exhibit 'A'

ORIGINAL

*Sariotis*

# NOTE

MIN: ████████████████                              Loan Number: ████████

| **April 29, 2011** | **Oakhurst** | **New Jersey** |
|---|---|---|
| [Date] | [City] | [State] |

**1801 Pitney Street**
**Ocean, New Jersey 07755**
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$210,000.00**                    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Two River Community Bank**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    **4.3750**    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A)  Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the    **1st**    day of each month beginning on    **July 01, 2011**    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **June 01, 2026**    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **Two River Community Bank, 1250 Highway 35 South, Middletown, NJ 07748**

or at a different place if required by the Note Holder.

### (B)  Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ **1,593.10**

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3200 1/01

ITEM 1646L1 (0609)                                                                                GreatDocs™
                                                                                                (Page 1 of 3)

*C.A.*

**Loan Number:**

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of      **Fifteen**      calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      **5.0000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in

MULTISTATE FIXED RATE NOTE—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

ITEM 1646L2 (0609)

**Form 3200 1/01**
GreatDocs™
(Page 2 of 3)



$f \cdot \chi$.

**Loan Number:** ▇▇▇▇▇▇▇

this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower has executed and acknowledges receipt of pages 1 through 3 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
George Sariotis            -Borrower   Cindy Sariotis            -Borrower

_____ (Seal)        _____ (Seal)
                           -Borrower                              -Borrower

_____ (Seal)        _____ (Seal)
                           -Borrower                              -Borrower

Pay to the order of

Without Rec *[Sign Original Only]*
U.S. Bank National Association
_____
Teresa Bulver
Vice President

Pay to the order of: U.S. Bank National Association without recourse.

_____
By: Donna Hamilton
   Vice President Mortgage Manager
Two River Community Bank,1250 Highway 35 South, Middletown, NJ, 07748

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        **Form 3200 1/01**

After Recording Return To:
**Two River Community Bank**
**1250 Highway 35 South**
**Middletown NJ, 07748**



——————————— [Space Above This Line For Recording Data] ———————————

Loan Number

# MORTGAGE

MAY 0 9 2011

MIN:

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "**Security Instrument**" means this document, which is dated **April 29, 2011**  , together with all Riders to this document.

**(B)** "**Borrower**" is **George Sarlotis and Cindy Sarlotis, Husband and Wife**

Borrower is the mortgagor under this Security Instrument.

**(C)** "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(D)** "**Lender**" is                                       **Two River Community Bank**
Lender is a **Corporation**                                                        organized and existing under
the laws of **the State of New Jersey, U.S.A.**                                    . Lender's address is
**1250 Highway 35 South, Middletown, NJ 07748**

NEW JERSEY—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3031 1/01

NEW JERSEY-MERS                                                                        GreatDocs®
ITEM 2717L1 (072908)                                                                  *(Page 1 of 12)*

Loan Number ▉▉▉▉▉

**(E)  "Note"** means the promissory note signed by Borrower and dated **April 29, 2011** . The Note states that Borrower owes Lender **Two Hundred Ten Thousand and no/100**

Dollars (U.S. $**210,000.00** )

plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **June 01, 2026**

**(F)  "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G)  "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H)  "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider       ☐ Condominium Rider             ☐ Second Home Rider

☐ Balloon Rider               ☐ Planned Unit Development Rider ☐ VA Rider

☐ 1-4 Family Rider            ☐ Biweekly Payment Rider        ☐ Other(s) [specify]

**(I)  "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)  "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)  "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)  "Escrow Items"** means those items that are described in Section 3.

**(M)  "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)  "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)  "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)  "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.



**Loan Number:** ███████

**(Q)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For these purposes, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the

**County**          of          **Monmouth**          :
[Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]

**Lot 105 Block 33**

**Parcel ID: Lot 105 Block 33**

which currently has the address of          **1801 Pitney Street**
                                                   [Street]

**Ocean**          , New Jersey          **07755**          ("Property Address"):
[City]                               [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

NEW JERSEY—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3031 1/01

NEW JERSEY-MERS                                                                    GreatDocs®
ITEM 2717L3 (072008)                                                              (Page 3 of 12)

# WESTCOR LAND TITLE INSURANCE COMPANY

File Number: █████████

## SCHEDULE C
## LEGAL DESCRIPTION

ALL that certain tract or parcel of land, situated, lying and being in the Township of Ocean, County of Monmouth, State of New Jersey, more particularly described as follows:

BEGINNING at a point in the easterly line of Pitney Street, distant 200.00 feet southerly from the Southeast corner of Star Street and Pitney Street; and running; thence

(1)      South 88 degrees 45 minutes East, 133.75 feet to a point; thence

(2)      South 10 degrees 36 minutes 14 seconds West, 145.00 feet, more or less, to the centerline of a brook; thence

BEGINNING again at the beginning point, and running; thence

(3)      South 01 degree 15 minutes West, 80.00 feet to a point in the centerline of a brook; thence

(4)      In the southeasterly direction along the centerline of a brook 109.00 feet, more or less, to the end of the second course therein.

NOTE: Being Lot(s)   Lot: 105, Block: 33;  Tax Map of the Township of Ocean, County of Monmouth, State of New Jersey.


NOTE: Lot and Block shown for informational purposes only.

New Jersey Land Title
Insurance Rating Bureau
Plain Language Commitment 2006
Revised 9/10/07

NJRB 3-08
Effective 2/15/2007

**Loan Number:** ▮▮▮▮▮▮▮▮

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future. If Lender accepts such payments, it shall apply such payments at the time such payments are accepted. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

NEW JERSEY—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3031 1/01

NEW JERSEY-MERS
ITEM 2717L4 (072906)

GreatDocs®
*(Page 4 of 12)*

$\mathcal{C}.\mathcal{A}.$

**Loan Number:** [redacted]

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse

NEW JERSEY—Single Family—Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**

_P.M._

**Loan Number** <span style="background:black">▮▮▮▮▮</span>

proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

NEW JERSEY—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

NEW JERSEY-MERS
ITEM 2717L6 (072008)

Form 3031 1/01

GreatDocs®
(Page 6 of 12)

**Loan Number:** ▉▉▉▉▉▉▉

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.  Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b)  Any such agreements will not affect the rights Borrower has—if any—with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11.  Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not

**Loan Number:** ▮▮▮▮▮▮▮▮

economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this

NEW JERSEY—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3031 1/01

NEW JERSEY-MERS
ITEM 2717L8 (072908)

GreatDocs®
*(Page 8 of 12)*

**Loan Number** ▇▇▇▇▇▇

Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this

NEW JERSEY—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

**NEW JERSEY-MERS**
ITEM 2717L9 (072908)

Form 3031 1/01

GreatDocs®
*(Page 9 of 12)*

**Loan Number** ████████

Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20.  **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21.  **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22.  **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless**

NEW JERSEY—Single Family—Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**

Form 3031 1/01

NEW JERSEY-MERS
ITEM 2717L10 (072608)

GreatDocs®
*(Page 10 of 12)*

Loan Number █████████

Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (e) the Borrower's right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at §§ 2A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 12 of this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____(Seal)
-Borrower
George Sariotis

_____(Seal)
-Borrower
Cindy Sariotis

_____(Seal)
-Borrower

_____(Seal)
-Borrower

_____(Seal)
-Borrower

_____(Seal)
-Borrower

NEW JERSEY—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

NEW JERSEY-MERS
ITEM 2717L11 (0729CS)

Form 3031 1/01

GreatDocs®
(Page 11 of 12)

**Loan Number** ▮▮▮▮▮

State of **New Jersey**

County of **Monmouth**                    , ss

On this **29th** day of **April 2011** , before me, the subscriber, personally appeared **George Sariotis and Cindy Sariotis, Husband and Wife**

                                                                        who, I am satisfied,

**is/are** the person(s) named in and who executed the within instrument, and thereupon **he/she/they** acknowledged that **he/she/they** signed, sealed and delivered the same as **his/her/their** act and deed, for the purposes therein expressed.

_____ Notary Public

**JASON BRIAN WALTERS**
NOTARY PUBLIC
STATE OF NEW JERSEY
COMM. ID 2340979
MY COMMISSION EXPIRES ~~FEBRUARY 25, 2011~~
MARCH 1, 2016

NEW JERSEY—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

NEW JERSEY-MERS
ITEM 2717L12 (072908)

Form 3031 1/01

GreatDocs®
(Page 12 of 12)



# Monmouth County Document Summary Sheet

MONMOUTH COUNTY CLERK

PO BOX 1251

MARKET YARD

FREEHOLD NJ 07728

| **Transaction Identification Number** | |
|---|---|

**Recorded Document to be Returned by Submitter to:**

US BANK / MORTGAGE SERVICING

809 S. 60TH STREET SUITE 210

WEST ALLIS, WI 53214

| **Official Use Only** | | |
|---|---|---|

CHRISTINE GIORDANO HANLON
COUNTY CLERK
MONMOUTH COUNTY, NJ

INSTRUMENT NUMBER
2017047930
RECORDED ON
May 15, 2017
3:09:45 PM
BOOK:OR-9227 PAGE:735
Total Pages: 3

| COUNTY RECORDING FEES | $50.00 |
| EFILE CONVENIENCE FEE | $2.00 |
| TOTAL PAID | $52.00 |

| **Submission Date** *(mm/dd/yyyy)* | 05/11/2017 |
|---|---|
| **No. of Pages** *(excluding Summary Sheet)* | 1 |
| **Recording Fee** *(excluding transfer tax)* *(Convenience Fee of $2.00 included)* | $52.00 |
| **Realty Transfer Tax** | $0.00 |
| **Total Amount** | $52.00 |
| **Document Type** | ASSIGNMENT MORTGAGE |
| **Electronic Recordation Level** | L2 - Level 2 (With Images) |

**Municipal Codes**

MONMOUTH COUNTY                99

**Bar Code(s)**

**Additional Information (Official Use Only)**

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF MONMOUTH COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

Not Certified Copy



## Monmouth County Document Summary Sheet

| | | | | | | |
|---|---|---|---|---|---|---|
| **Type** | ASSIGNMENT/MORTGAGE | | | | | |
| **Consideration** | | | | | | |
| **Submitted By** | US BANK / MORTGAGE SERVICING (CSC/INGEO SYSTEMS INC) | | | | | |
| **Document Date** | 05/11/2017 | | | | | |
| **Reference Info** | | | | | | |

| **Book ID** | **Book** | **Beginning Page** | **Instrument No.** | **Recorded/File Date** |
|---|---|---|---|---|
| OR | 8890 | 4657 | 2011044080 | |
| | | --- | | |

**ASSIGNMENT/MORTGAGE**

| MORTGAGOR | **Name** | **Address** |
|---|---|---|
| | GEORGE SARIOTIS | |
| | CINDY SARIOTIS | |
| | TWO RIVER COMMUNITY BANK | |
| | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC | |

| ASSIGNEE | **Name** | **Address** |
|---|---|---|
| | U S BANK NA | |

| **Parcel Info** | | | | | |
|---|---|---|---|---|---|
| **Property Type** | **Tax Dist.** | **Block** | **Lot** | **Qualifier** | **Municipality** |
| | | | | | |

***\* DO NOT REMOVE THIS PAGE.***
***COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF MONMOUTH COUNTY FILING RECORD.***
***RETAIN THIS PAGE FOR FUTURE REFERENCE.***

Not Certified Copy

***Send All Notices to Assignee***

RECORDING REQUESTED AND PREPARED BY:
**US Bank / Mortgage Servicing**
**809 S. 60th Street, Suite 210**
**West Allis, WI 53214-0000**
**Mary J Irwin**

AND WHEN RECORDED MAIL TO:
**US Bank / Mortgage Servicing**
**809 S. 60th Street Suite 210**
**West Allis, WI 53214-0000**
**ATTN: Mary J Irwin**

---

### ASSIGNMENT OF MORTGAGE

MIN: [redacted]                  MERS Phone #: **(888) 679-6377**
Customer Number: [redacted]
Service Number: [redacted]
Loan Number: [redacted]

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR TWO RIVER COMMUNITY BANK, ITS SUCCESSORS AND ASSIGNS , C/O P.O BOX 2026 , FLINT, MI 485012026** , by these presents does convey, assign, transfer and set over to **U.S. BANK NATIONAL ASSOCIATION** , **4801 FREDERICA STREET , OWENSBORO, KY 423010000** , the following described Mortgage, with all interest, all liens, and any rights due or to become due thereon. Said Mortgage for **$210000.00** , is recorded in the State of **NEW JERSEY** , County of **Monmouth** Official Records, dated **04/29/2011** and recorded on **05/09/2011** , asInstrument No. **2011044080** in Book No. **OR-8890** , at Page No. **4657** and re-recorded as Instrument No. in Book No. — , at Page No. — .

Original Mortgagor: **GEORGE SARIOTIS AND CINDY SARIOTIS, HUSBAND AND WIFE**
Original Mortgagee: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR TWO RIVER COMMUNITY BANK, ITS SUCCESSORS AND ASSIGNS**
Property Address: **1801 PITNEY STREET OCEAN, NJ 077550000**
Date: **05/11/2017**

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**
**AS NOMINEE FOR TWO RIVER COMMUNITY BANK, ITS**
**SUCCESSORS AND ASSIGNS**
By:

*Janice D Dela Cruz*

Janice D Dela Cruz, Assistant Secretary

STATE OF WISCONSIN
COUNTY OF MILWAUKEE } s.s.

This instrument was acknowledged before me on **05/11/2017** , by **Janice D Dela Cruz** , **Assistant Secretary** of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR TWO RIVER COMMUNITY BANK, ITS SUCCESSORS AND ASSIGNS** .

*Janice abner*

Janice Abner, Notary Public
My Commission Expires: **12/10/2017**

[Notary Seal: NOTARY PUBLIC — JANICE ABNER — STATE OF WISCONSIN]



# Monmouth County Document Summary Sheet

| | **Transaction Identification Number** | |
|---|---|---|
| MONMOUTH COUNTY CLERK<br>PO BOX 1251<br>MARKET YARD<br>FREEHOLD NJ 07728 | **Recorded Document to be Returned by Submitter to:**<br>SERVICELINK - LOAN MODIFICATION<br>3220 EL CAMINO REAL<br>IRVINE, CA 92602 | |

| **Official Use Only** | **Submission Date** *(mm/dd/yyyy)* | | 11/20/2017 |
|---|---|---|---|
| | **No. of Pages** *(excluding Summary Sheet)* | | 7 |
| | **Recording Fee** *(excluding transfer tax)* *(Convenience Fee of $2.00 included)* | | $102.00 |
| | **Realty Transfer Tax** | | $0.00 |
| | **Total Amount** | | $102.00 |
| | **Document Type** | MORTGAGE MODIFICATION | |
| | **Electronic Recordation Level** | L2 - Level 2 (With Images) | |
| | **Municipal Codes** | | |
| | MONMOUTH COUNTY | | 99 |
| | **Bar Code(s)** | | |

CHRISTINE GIORDANO HANLON
COUNTY CLERK
MONMOUTH COUNTY, NJ

INSTRUMENT NUMBER
2017117380
RECORDED ON
Dec 04, 2017
3:55:18 PM
BOOK:OR-9261 PAGE:4776
Total Pages: 9

COUNTY RECORDING FEES    $100.00
EFILE CONVENIENCE FEE      $2.00
TOTAL PAID               $102.00

*Not Certified Copy*

**Additional Information (Official Use Only)**

***\* DO NOT REMOVE THIS PAGE.***
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF MONMOUTH COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*



# Monmouth County Document Summary Sheet

| Type | MORTGAGE MODIFICATION |
|---|---|
| Consideration | |
| Submitted By | SERVICELINK - LOAN MODIFICATION (CSC/INGEO SYSTEMS INC) |
| Document Date | 10/03/2017 |
| Reference Info | |

| | Book ID | Book | Beginning Page | Instrument No. | Recorded/File Date |
|---|---|---|---|---|---|
| | OR | 8890 | 4657 | 2011044080 | |

**MORTGAGE MODIFICATION**

| MORTGAGOR | Name | | Address | |
|---|---|---|---|---|
| | GEORGE SARIOTIS | | | |
| | CINDY SARIOTIS | | | |

| MORTGAGEE | Name | Address |
|---|---|---|
| | US BANK NA | |

| Parcel Info | | | | | |
|---|---|---|---|---|---|
| Property Type | Tax Dist. | Block | Lot | Qualifier | Municipality |
| | | | | | |

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF MONMOUTH COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

Not Certified Copy

Inst. # 2017117380 - Page 3 of 9

This Document Prepared By:
**JESSICA VANWINKLE**
**U.S. BANK N.A.**
**4801 FREDERICA ST**
**OWENSBORO, KY 42301**
**(800) 365-7772**

**Requested By and**
**When Recorded Return To:**
**ServiceLink Loan Mod Solutions**
**3220 El Camino Real**
**Irvine, CA 92602**
**(800) 934-3124**

Tax/Parcel #: ▮▮▮▮▮

_____ [Space Above This Line for Recording Data] _____

Original Principal Amount: **$210,000.00**          Freddie Mac Loan No. ▮▮▮▮▮
Unpaid Principal Amount: **$129,446.15**          Loan No ▮▮▮▮▮
New Principal Amount: **$137,742.38**
Capitalization Amount: **$8,296.23**

## LOAN MODIFICATION AGREEMENT (MORTGAGE)
### (To a Fixed Interest Rate)

**IF THE LOAN MODIFICATION AGREEMENT MUST BE RECORDED, TWO ORIGINAL LOAN MODIFICATION AGREEMENTS MUST BE EXECUTED BY THE BORROWER: ONE ORIGINAL IS TO BE FILED WITH THE NOTE AND ONE ORIGINAL IS TO BE RECORDED IN THE LAND RECORDS WHERE THE SECURITY INSTRUMENT IS RECORDED**

This Loan Modification Agreement (the "Agreement"), made and effective this **3RD** day of **OCTOBER, 2017**, between **U.S. BANK N.A.** ("Lender"), whose address is **4801 FREDERICA ST, OWENSBORO, KY 42301**, and **GEORGE SARIOTIS AND CINDY SARIOTIS, HIS WIFE** ("Borrower"), whose address is **1801 PITNEY ST, OAKHURST, NEW JERSEY 07755**, modifies and amends certain terms of Borrower's indebtedness evidenced by (1) the Note (the "Note") to Lender dated **APRIL 29, 2011**, in the original principal sum of U.S. **$210,000.00** and secured by (2) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") and Rider(s), if any, the Note **bearing the same date as** and recorded on **MAY 9, 2011** in **INSTRUMENT NO. 2011044080  BOOK OR 8890  PAGE 4657**, of the

MULTISTATE LOAN MODIFICATION AGREEMENT (To a Fixed Interest
rate) - Single Family - Freddie Mac UNIFORM INSTRUMENT Form 5161

Page 1

**OFFICIAL** Records of **MONMOUTH COUNTY, NEW JERSEY**. The Security Instrument covers the real and personal property described in the Security Instrument and defined as the "Property", located at:

**1801 PITNEY ST, OAKHURST, NEW JERSEY 07755**
[Property Address]

the real property described being set forth as follows:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

**SEE ATTACHED EXHIBIT "B" FOR MORTGAGE SCHEDULE**

In consideration of the mutual promises and agreements exchanged, Lender and Borrower agree as follows (notwithstanding anything to the contrary contained in the Note and Security Instrument):

1.  Current Balance. As of **NOVEMBER 1, 2017**, the amount payable under the Note and Security Instrument (the "Unpaid Principal Balance") is U.S. **$137,742.38**.

2.  Interest Rate. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **4.3750%**, beginning **NOVEMBER 1, 2017**, both before and after any default described in the Note. The yearly rate of **4.3750%** will remain in effect until principal and interest is paid in full.

3.  Monthly Payments and Maturity Date. Borrower promises to make monthly payments of principal and interest of U.S. **$687.73**, beginning on the **1ST** day of **DECEMBER, 2017**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on **NOVEMBER 1, 2047**, (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Modification Agreement, the Borrower will pay these amounts in full on the Maturity Date.

4.  Place of Payment. Borrower must make the monthly payments at
    **4801 FREDERICA ST, OWENSBORO, KY 42301**
    or such other place as Lender may require.

5.  Partial Payments. Borrower may make a full prepayment or partial prepayments without paying any prepayment charge. Lender will use the prepayments to reduce the amount of principal that Borrower owes under the Note. However, Lender may apply the Prepayment to the accrued and unpaid interest on the prepayment amount before applying the prepayment to reduce the principal amount of the Note. If Borrower makes a partial prepayment, there will be no changes in the due dates or the amount of the monthly payments unless Lender agrees in writing to those changes.

6.  Property Transfer. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 of the Security Instrument, within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may

MULTISTATE LOAN MODIFICATION AGREEMENT (To a Fixed Interest
rate) - Single Family - Freddie Mac UNIFORM INSTRUMENT Form 5161

Page 2

invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

7.  Compliance with Covenants. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument.

8.  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except where otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.



MULTISTATE LOAN MODIFICATION AGREEMENT (To a Fixed Interest rate) - Single Family - Freddie Mac UNIFORM INSTRUMENT Form 5161

Page 3

In Witness Whereof, I have executed this Agreement.

Borrower: **GEORGE SARIOTIS**                                    **11/9/17**
                                                                Date

Borrower: **CINDY SARIOTIS**                                     **11/9/17**
                                                                Date

Borrower: _____                     _____
                                                                **Date**

Borrower: _____                     _____
                                                                **Date**

_____ [Space Below This Line for Acknowledgments]

**BORROWER ACKNOWLEDGMENT**

State of **NEW JERSEY**

County of _Monmouth_ , SS:

I CERTIFY that on _9th_, _November_ , 20 __17__ , **GEORGE SARIOTIS, CINDY SARIOTIS** personally came before me and acknowledged under oath, to my satisfaction, that this person (or if more than one each person):

   a.   is named in and personally signed the attached document; and

   b.   signed and delivered this document as his/her/their act and deed.

_____
Notary Public

Print Name: _____

My commission expires: _____

CHRISTOPHER K SARIOTIS
Commission # 50051751
Notary Public, State of New Jersey
My Commission Expires
December 30, 2021

MULTISTATE LOAN MODIFICATION AGREEMENT (To a Fixed Interest
rate) - Single Family - Freddie Mac UNIFORM INSTRUMENT Form 5161

In Witness Whereof, the Lender have executed this Agreement.

**U.S. BANK N.A.**

By **Terry L. Smith**
**Mortgage Document Officer**    (print name)    (title)

11/14/17
Date

_____ [Space Below This Line for Acknowledgments] _____

**CORPORATE ACKNOWLEDGMENT**

STATE OF KENTUCKY

COUNTY OF DAVIESS) ss

I CERTIFY that on this **14** day of **November** , 20 **17** , **Terry L. Smith**
personally came before me and stated to my satisfaction that this person (or if more than one, each person):

    (a) Was the maker of the attached instrument;

    (b) Was authorized to and did execute this instrument as **MORTGAGE DOCUMENT OFFICER** of
the national association, the entity named in this instrument; and,

    (c) Executed this instrument as the act of the entity named in this instrument

Terry L. Smith
Mortgage Document Officer

_____
(Print name and title below signature)

Signed and sworn to before me on **November 14** , 20 **17**

Notary Public

Printed Name: **Lori Kays**

My commission expires: **6 15 18**

OFFICIAL SEAL
LORI KAYS
NOTARY PUBLIC - KENTUCKY
STATE-AT-LARGE
My Comm. Expires 06-05-2018
ID # 512764

MULTISTATE LOAN MODIFICATION AGREEMENT (To a Fixed Interest
rate) - Single Family - Freddie Mac UNIFORM INSTRUMENT Form 5161

**EXHIBIT A**

**BORROWER(S): GEORGE SARIOTIS AND CINDY SARIOTIS, HIS WIFE**

**LOAN NUMBER:** ███████

**LEGAL DESCRIPTION:**

The land referred to in this document is situated in the STATE OF NEW JERSEY, COUNTY OF MONMOUTH, CITY OF OAKHURST, and described as follows:

ALL THAT CERTAIN TRACT OR PARCEL OF LAND, SITUATED, LYING AND BEING IN THE TOWNSHIP OF OCEAN, COUNTY OF MONMOUTH, STATE OF NEW JERSEY, MORE PARTICULARLY DESCRIBED AS FOLLOWS:
BEGINNING AT A POINT IN THE EASTERLY LINE OF PITNEY STREET, DISTANT 200.00 SOUTHERLY FROM THE SOUTHEAST CORNER OF STAR STREET AND PITNEY STREET; AND RUNNING; THENCE
(1) SOUTH 88 DEGREES 45 MINUTES EAST, 133.75 FEET TO A POINT; THENCE
(2) SOUTH 10 DEGREES 36 MINUTES 14 SECONDS WEST, 145.00 FEET, MORE OR LESS, TO THE CENTERLINE OF A BROOK; THENCE
BEGINNING AGAIN AT THE BEGINNING POINT, AND RUNNING; THENCE
(3) SOUTH 01 DEGREES 15 MINUTES WEST, 80.00 FEET TO A POINT IN THE CENTERLINE OF A BROOK; THENCE
(4) IN THE SOUTHEASTERLY DIRECTION ALONG THE CENTERLINE OF A BROOK 109.00 FEET, MORE OR LESS, TO THE END OF THE SECOND COURSE THEREIN.
NOTE: BEING LOT(S): 105, BLOCK: 33, TAX MAP OF THE TOWNSHIP OF OCEAN, COUNTY OF MONMOUTH, STATE OF NEW JERSEY
NOTE: LOT AND BLOCK SHOWN FOR INFORMATIONAL PURPOSES ONLY.

ALSO KNOWN AS: 1801 PITNEY ST, OAKHURST, NEW JERSEY 07755

MULTISTATE LOAN MODIFICATION AGREEMENT (To a Fixed Interest
rate) - Single Family - Freddie Mac UNIFORM INSTRUMENT Form 5161
███████

Page 6



## EXHIBIT B
## MORTGAGE SCHEDULE

Mortgage made by **GEORGE SARIOTIS AND CINDY SARIOTIS, HIS WIFE** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR TWO RIVER COMMUNITY BANK** for **$210,000.00** and interest, dated **APRIL 29, 2011** and recorded on **MAY 9, 2011** in **INSTRUMENT NO. 2011044080 BOOK OR 8890 PAGE 4657**.

This mortgage was assigned from **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR TWO RIVER COMMUNITY BANK** (assignor), to **U.S. BANK NATIONAL ASSOCIATION** (assignee), by assignment of mortgage dated **MAY 11, 2017** and recorded on **MAY 15, 2017** in **INSTRUMENT NO. 2017047930 BOOK 9227 PAGE 735**.



MULTISTATE LOAN MODIFICATION AGREEMENT (To a Fixed Interest rate) - Single Family - Freddie Mac UNIFORM INSTRUMENT Form 5161

Page 7



## Monmouth County Document Summary Sheet

MONMOUTH COUNTY CLERK

PO BOX 1251

MARKET YARD

FREEHOLD NJ 07728

| **Transaction Identification Number** | 3770366 | 3307308 |
|---|---|---|

**Recorded Document to be Returned by Submitter to:**

US BANK / MORTGAGE SERVICING

809 S. 60TH STREET SUITE 210

WEST ALLIS, WI 53214

### Official Use Only

CHRISTINE GIORDANO HANLON
COUNTY CLERK
MONMOUTH COUNTY, NJ

INSTRUMENT NUMBER
2019024537
RECORDED ON
Mar 20, 2019
11:27:03 AM
BOOK:OR-9340 PAGE:987
Total Pages: 3

COUNTY RECORDING FEES    $40.00
EFILE CONVENIENCE FEE     $2.00
TOTAL PAID               $42.00

| | |
|---|---|
| **Submission Date** *(mm/dd/yyyy)* | 03/19/2019 |
| **No. of Pages** *(excluding Summary Sheet)* | 1 |
| **Recording Fee** *(excluding transfer tax)* *(Convenience Fee of $2.00 included)* | $52.00 |
| **Realty Transfer Tax** | $0.00 |
| **Total Amount** | $52.00 |
| **Document Type** | ASSIGNMENT/MORTGAGE |
| **Electronic Recordation Level** | L2 - Level 2 (With Images) |

**Municipal Codes**

OCEAN TOWNSHIP                                    3702

956256

### Additional Information (Official Use Only)

*** DO NOT REMOVE THIS PAGE.**
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF MONMOUTH COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

Not Certified Copy



**Monmouth County Document Summary Sheet**

| | Type | ASSIGNMENT/MORTGAGE | | | | | |
|---|---|---|---|---|---|---|---|
| | Consideration | | | | | | |
| | Submitted By | US BANK / MORTGAGE SERVICING (CSC/INGEO SYSTEMS INC) | | | | | |
| | Document Date | 03/19/2019 | | | | | |
| | Reference Info | | | | | | |
| | **Book ID** | **Book** | **Beginning Page** | **Instrument No.** | | **Recorded/File Date** | |
| | OR | 8890 | 4657 | 2011044080 | | | |
| | | | --- | | | | |
| ASSIGNMENT/M ORTGAGE | MORTGAGOR AND ASSIGNOR | **Name** | | | **Address** | | |
| | | GEORGE SARIOTIS | | | | | |
| | | CINDY SARIOTIS | | | | | |
| | | U S BANK NA | | | | | |
| | ASSIGNEE | **Name** | | | **Address** | | |
| | | SELENE FINANCE L.P. | | | | | |
| | Parcel Info | | | | | | |
| | **Property Type** | **Tax Dist.** | **Block** | **Lot** | **Qualifier** | **Municipality** | |
| | | | | | | | |

Not Certified Copy

*** DO NOT REMOVE THIS PAGE.**
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF MONMOUTH COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

RECORDING REQUESTED AND PREPARED BY:
**US Bank / Mortgage Servicing**
**Mary J Irwin**
**809 S. 60th Street, Suite 210**
**West Allis WI 53214-0000**
**866-787-9167 x 259-3816**

AND WHEN RECORDED MAIL TO:
**US Bank / Mortgage Servicing**
**Mary J Irwin**
**809 S. 60th Street Suite 210**
**West Allis, WI 53214-0000**

Customer Number: **SELENE-**
Service Number:
Loan #:

---

### ASSIGNMENT OF MORTGAGE

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **U.S. BANK NATIONAL ASSOCIATION, 4801 FREDERICA STREET, OWENSBORO, KY 423010000,** by these presents does convey, assign, transfer and set over to **SELENE FINANCE LP, 9990 RICHMOND AVENUE SUITE 400 SOUTH, HOUSTON, TX 770420000,** the following described Mortgage, with all interest, all liens, and any rights due or to become due thereon. Said Mortgage for **$210000.00,** is recorded in the State of **NEW JERSEY,** County of **Monmouth** Official Records, dated **04/29/2011** and recorded on **05/09/2011,** as Instrument No. **2011044080** in Book No. **OR-8890,** at Page No. **4657**

Original Mortgagor: **GEORGE SARIOTIS AND CINDY SARIOTIS, HUSBAND AND WIFE**
Original Mortgagee: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR TWO RIVER COMMUNITY BANK, ITS SUCCESSORS AND ASSIGNS**
Property Address: **1801 PITNEY STREET OCEAN, NJ 077550000**
Date: **03/19/2019**

**U.S. BANK NATIONAL ASSOCIATION**
By:

Name: **Janice D Dela Cruz**
Title: **Officer**

STATE OF **WISCONSIN**
COUNTY OF **MILWAUKEE** } s.s.

On **03/19/2019,** before me, **Danielle A Schuldt,** Notary Public, personally appeared **Janice D Dela Cruz, Officer** of **U.S. BANK NATIONAL ASSOCIATION,** personally known to me (or proved to me the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that she/he/they executed the same in her/his/their authorized capacity(ies), and that by her/his/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

DANIELLE A SCHULDT
Notary Public
State of Wisconsin

Notary Public: **Danielle A Schuldt**
My Commission Expires: **11/25/2021**

Not Certified Copy

# Exhibit 'B'

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**Robertson, Anschutz, Schneid & Crane LLC**
Attorneys for Secured Creditor
10700 Abbott's Bridge Rd., Suite 170
Duluth, GA 30097
Telephone No.: 973-575-0707 (local)
Telephone No.: 561-241-6901 (main)

Laura Egerman, Esq. (LE-8250)

In Re:

**GEORGE SARIOTIS,**

**Debtor.**

Case No.:   19-32528-MBK

Chapter:   11

Hearing Date: August 20, 2020

Judge:   Michael B. Kaplan

## CERTIFICATION OF CREDITOR REGARDING POST PETITION PAYMENT HISTORY
## (NOTE AND MORTGAGE DATED APRIL 29, 2011)

Genevieve A. Jacobs _____, employed as   Bankruptcy Specialist _____ by
Selene Finance LP _____, hereby certifies the following:

Recorded on May 9, 2011, in Monmouth County, in Book OR-8890 at Page 4657

Property Address: 1801 Pitney St., Oakhurst, NJ 07755

Mortgage Holder: SELENE FINANCE LP

Mortgagor(s)/ Debtor(s): George Sariotis and (Non Filing)Cindy Sariotis

POST-PETITION PAYMENTS (Petition filed on December 2, 2019)

| Amount Due | Date Payment Was Due | How Payment Was Applied (Mo./Yr.) | Amount Received | Date Payment Received | Running Suspense |
|---|---|---|---|---|---|
| 1.$1,899.20 | 2/1/2020 | N/A | N/A | N/A | $109.94 |
| 2.$1,899.20 | 3/1/2020 | N/A | N/A | N/A | $109.94 |
| 3.$1,899.20 | 4/1/2020 | N/A | N/A | N/A | $109.94 |
| 4.$1,899.20 | 5/1/2020 | N/A | N/A | N/A | $109.94 |
| TOTAL: $7,596.80 | | | | | $109.94 |

[Continue on attached sheets if necessary.]

Monthly payments past due: 4 mos. x $ 1,899.20 - $109.94 (Suspense Balance) = $7,486.86 of April 17, 2020

Each current monthly payment is comprised of:

| | | |
|---|---|---|
| Principal | $ 1,211.47 | |
| Interest | $ 0.00 | |
| R.E. Taxes: | $ 687.73 | |
| Insurance: | $ 0.00 | |
| Late Charge: | $ 0.00 | |
| Other: | $ 0.00 | (Specify:) |
| TOTAL | $ 1,899.20 | |

If the monthly payment has changed during the pendency of the case, please explain (attach separate sheet(s) if necessary): 12/1/2019 $2009.14 and 1/1/2020 $1899.20

Pre-petition arrears: 12/1/2019 to 12/1/2019 $7,676.59(P/I $1,375.46, Escrow Deficiency $2,125.87 and Escrow Projected $4,175.26)

I certify under penalty of perjury that the above is true.

Date: 7/21/2020

Signature

rev.8/1/15

2

# Exhibit 'C'

**Freddie Mac**

**BROKER'S PRICE OPINION**

Import Form Data

Export Form Data

Freddie Mac Loan # _____
Servicer Loan # _____

Exterior /Curb Side [X]     Inspection Date 06/16/2020
Interior [ ]
Interior Access Denied [ ]     Reason _____     BPO # ▉▉▉

| BPO Firm Name | Broker | Phone |
|---|---|---|
| VIRTUAL REALTY PARTNERS INC | STEVE KELLY | (201) 745-1233 |

### SUBJECT PROPERTY DESCRIPTION

| Property Address 1801 PITNEY ST | | | | Unit # |
|---|---|---|---|---|
| City OAKHURST | County MONMOU | State NJ | | Zip 07755 |

| Is property currently listed for sale with a real estate firm? [ ] Yes [X] No | Name of Listing Broker, Salesperson or Firm | Phone |
|---|---|---|
| Property Type: Single Family | | Condo Fee $ 0 |

Occupant:   [X] Owner   [ ] Tenant   [ ] Vacant

### Estimate of repairs needed for subject property

| Interior: | | Exterior: | |
|---|---|---|---|
| Painting | $ 0 | Painting | $ 0 |
| Structural | $ 0 | Structural | $ 0 |
| Appliances | $ 0 | Landscaping | $ 0 |
| Utilities | $ 0 | Roof | $ 0 |
| Carpet/Floors | $ 0 | Windows | $ 0 |
| Other | $ 0 | Other | $ 0 |
| Cleaning/Trash Removal | $ 0 | Do you recommend repairs? [ ] Yes [X] No | |

Repairs Total: $ 0.00

Overall Property Condition:   [ ] Excellent   [X] Good   [ ] Fair   [ ] Poor
Are there any items that require IMMEDIATE attention/action?   [ ] Yes   [X] No
Title/Legal Issues?   [ ] Yes   [X] No
Do any environmental issues affect the value of the property?   [ ] Yes   [X] No
If yes to any of the above, please explain:
BASED ON EXTERIOR OBSERVATION THE SUBJECT APPEARS TO BE IN AVERAGE CONDITION. NO IMMEDIATE
REPAIR OR MODERNIZATION REQUIRED.

### NEIGHBORHOOD

| Property Values: | [ ] Increasing | [X] Stable | [ ] Declining | Predominant Occupancy | [X] Owner | [ ] Tenant |
|---|---|---|---|---|---|---|
| Marketing Time: [ ] Under 3 Mos. [X] 3-6 Mos. [ ] Over 6 Mos. | | | | Vacancy Rate [ ] 0-5% [X] 5-10% [ ] 10-20% [ ] 20% + | | |

No. of Active Listings in Neighborhood: 15    Price Range of Active Listings in Neighborhood $ 455200  to $ 838800

COMMENTS  THE SUBJECT IS LOCATED IN A SUBURBAN NEIGHBORHOOD WITH STABLE PROPERTY VALUES
STABLE REO ACTIVITY AND A BALANCED SUPPLY VS DEMAND OF HOMES. THE ECONOMY AND
EMPLOYMENT CONDITIONS ARE STABLE. THERE WERE NO FUNCTIONAL OR ECONOMIC
OBSOLESCENCE OBSERVED.

### VALUE ESTIMATION

| Probable Sale Price | 90-Day Marketing Time | 120-Day Marketing Time | 180-Day Marketing Time |
|---|---|---|---|
| As Is | 620000 | 620000 | 620000 |
| As Repaired | 620000 | 620000 | 620000 |

Property should be listed:   As Is: [X]   As Repaired: [ ]
Anticipated Seller-Paid Financing Costs: $ 0
COMMENTS: (Describe your marketing strategy and reasons for As Is/As Repaired recommendations)
THE VALUE AS OF TODAY IS 620000.00. TYPICAL MARKETING TIME IS 120 DAYS. ...MORE IN ADDENDUM

PREPARED BY: STEVE KELLY
Signature
Date 06/16/2020

THIS IS AN OPINION OF PRICE OR COMPARATIVE MARKET ANALYSIS AND IS NOT AN APPRAISAL. This opinion does not adhere
to the guidelines for development of an appraisal or analysis contained in the Uniform Standards of Professional Appraisal Practice of the Appraisal Foundation.
This opinion may have been developed in connection with a loss mitigation request made by you. If so, this opinion is being provided to you on behalf of your
servicer and the Federal Home Loan Mortgage Corporation. Your servicer may have also used a different or additional property value or price to make a loss
mitigation decision. If you have questions, please visit Freddie Mac's website at http //www.freddiemac.com/valuation.

## COMPETITIVE LISTINGS

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 1801 PITNEY ST | 1704 FANWOOD ST OC | | 1608 FINDERNE ST OA | | 508 ELIZABETH ST OA | |
| Proximity to Subject | | 1/4 Miles | | 1/2 Miles | | 3/4 Miles | |
| Current List Price | $ | $ 695500 | | $569000 | | $ 699000 | |
| Current List Date | | 05/28/2020 | | 06/04/2020 | | 04/23/2020 | |
| Original List Price | $ | $ 695500 | | $ 569000 | | $ 699000 | |
| Original List Date | | 05/28/2020 | | 06/04/2020 | | 04/23/2020 | |
| VALUE ADJUSTMENTS (Use the following codes for the adjustments: S=Superior E=Equal I=Inferior U=Unknown) | | | | | | | |
| DESCRIPTION | DESCRIPTION | DESCRIPTION | ADJ | DESCRIPTION | ADJ | DESCRIPTION | ADJ |
| Above Grade Room Count | Total # of Rooms 8 Bdrm 5 Baths 3 | Total # of Rooms 8 Bdrm 5 Baths 3.5 | | Total # of Rooms 7 Bdrm 4 Baths 2.5 | | Total # of Rooms 7 Bdrm 4 Baths 2.5 | |
| Gross Living Area | Sq Ft 3337 | Sq Ft 3577 | Code | Sq Ft 2800 | Code | Sq Ft 3200 | Code |
| Location | GOOD | GOOD | E | GOOD | E | GOOD | E |
| Site/Lot Size | 0.27 | 0.23 | I | 0.23 | I | 0.36 | S |
| Design and Appeal | SINGLE FAMILY | SFD | E | SFD | E | SFD | E |
| Age (number of yrs. since house was built) | 44 | 35 | E | 28 | S | 53 | E |
| Overall Condition | Good | Good | E | Good | E | Good | E |
| Garage/Carport | None | 2 Attached | S | 2 Attached | S | 1 Attached | S |
| Porch, Patio Deck, Pool, Fence | POOL | PORCH | I | PORCH, DECK | I | PORCH, DECK | S |
| Overall Rating/Est.$ Value of Adjustments | | -10240.00 | S | 13430.00 | I | -760.00 | S |
| Indicate Property Most Comparable to Subject (Check One) | | ☐ | | ☒ | | ☐ | |

COMMENTS: LC1  FAIR MARKET  0 19 MILES FROM SUBJECT -4000 00 BATHS -5760 00 LIVING AREA 20 00 LOT SIZE -10000.00 GARAGE 9500.00 FEATURES PORCH. NET ADJUSTMENT -10240.00. THIS PROPERTY IS SIMILAR  IN  CONDITION    AND  SUPERIOR IN GLA  TO THE ...MORE IN ADDENDUM

## CLOSED SALES

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 1801 PITNEY ST | 557 W LINCOLN AVE C | | 1706 FANWOOD ST OA | | 130 WHALEPOND RD | |
| Proximity to Subject | | 1/2 Miles | | 1/4 Miles | | 1/2 Miles | |
| Original List Price | $ | $ 699000 | | $ 599000 | | $ 745000 | |
| List Price When Sold | $ | $ 699000 | | $ 599000 | | $ 699900 | |
| Sales Price | $ | $ 625000 | | $ 575000 | | $ 660000 | |
| Sales Date | | 07/19/2019 | | 11/07/2019 | | 02/07/2020 | |
| Days on Market | | 157 | | 168 | | 265 | |
| VALUE ADJUSTMENTS (Use the following codes for the adjustments: S=Superior E=Equal I=Inferior U=Unknown) | | | | | | | |
| DESCRIPTION | DESCRIPTION | DESCRIPTION | ADJ | DESCRIPTION | ADJ | DESCRIPTION | ADJ |
| Above Grade Room Count | Total # of Rooms 8 Bdrm 5 Baths 3 | Total # of Rooms 7 Bdrm 4 Baths 2.5 | | Total # of Rooms 8 Bdrm 5 Baths 2.5 | | Total # of Rooms 7 Bdrm 4 Baths 3.5 | |
| Gross Living Area | Sq Ft 3337 | Sq Ft 3209 | Code | Sq Ft 2863 | Code | Sq Ft 3940 | Code |
| Sales or Financing Concessions | | 0.00 | E | 0.00 | E | 0.00 | E |
| Location | GOOD | GOOD | E | GOOD | E | GOOD | E |
| Site/Lot Size | 0.27 | 0.28 | E | 0.23 | I | 0.34 | S |
| Landscaping | Good | Good | E | Good | E | Good | E |
| Design and Appeal | SINGLE FAMILY | SFD | E | SFD | E | SFD | E |
| Age (number of yrs. since house was built) | 44 | 18 | S | 33 | S | 30 | S |
| Overall Condition | Good | Good | E | Good | E | Good | E |
| Garage/Carport | None | 2 Attached | S | 2 Attached | S | 2 Attached | S |
| Porch, Patio Deck, Pool, Fence | POOL | PATIO | I | PORCH, POOL | S | | I |
| Overall Rating/Est.$ Value of Adjustments | | 3790.00 | I | 2570.00 | I | -18930.00 | S |
| Indicate Property Most Comparable to Subject (Check One) | | ☒ | | ☐ | | ☐ | |

COMMENTS: SC1  FAIR MARKET  0 39 MILES FROM SUBJECT  2000 00 BATHS 3080 00 LIVING AREA -10 00 BASEMENT -780 00 YEAR BUILT -10000 00 GARAGE 9500 00 FEATURES PATIO  NET ADJUSTMENT 3790.00.        THIS PROPERTY IS SIMILAR  IN  CONDITION    ...MORE IN ADDENDUM

**BPOdirect Addendum**

**BPOdirect Order #:** _____    **Project Code:** _____

**FM Loan Number:** _____    **SS Loan Number:** _____

**Property Address:** 1801 PITNEY ST _____ , OAKHURST _____ , NJ, 07755

**Comments:**

HTTPS://CLIENTS.PROTK.COM/PROTECK.INTEGRATION.FREDDIEMAC.CLIE
SUBJECT COMMENTS   TO LOCATE COMPARABLE IT WAS NECESSARY
TO EXCEED BEDBATH COUNT AGE GARAGE LOT SIZE IN THE REPORT.
CLOSE DATE EXCEEDS OVER SIX MONTHS FOR SOLD COMPS. THE MLS
SEARCH CRITERIA LOOKED FOR COMPARABLE WITH A GLA RANGE OF
2670 TO 4004 SQ.FT. AND WITHIN A RADIUS OF 1 MILE FROM THE
SUBJECT. THE SUBJECT IS LOCATED NEAR THE SCHOOL WORSHIP
PLACE PARK. ALL COMPARABLE HAVE FACTORS AND SUPPORT SUBJECT
VALUE AND MARKETABILITY. IN DELIVERING FINAL VALUATION THE MOST
WEIGHT HAS BEEN PLACED ON CS1 AND LC2 AS THEY ARE MOST
SIMILAR TO SUBJECT CONDITION AND OVERALL STRUCTURE.  SUBJECT
ATTRIBUTES ARE FROM TAX RECORD. COMPARABLE LISTING
COMMENTS CONTINUED.. SUBJECT. LC2  FAIR MARKET. 0.36 MILES FROM
SUBJECT. 2000.00 BATHS 12890.00 LIVING AREA 20.00 LOT SIZE -480.00
YEAR BUILT -10000.00 GARAGE 9000.00 FEATURES PORCH DECK. NET
ADJUSTMENT 13430.00. THIS PROPERTY IS SIMILAR  IN  CONDITION
AND  SUPERIOR IN AGE  TO THE SUBJECT. LC3  FAIR MARKET. 0.59 MILES
FROM SUBJECT. 2000.00 BATHS 3290.00 LIVING AREA -20.00 BASEMENT
-30.00 LOT SIZE -5000.00 GARAGE -1000.00 FEATURES PORCH DECK
POOL. NET ADJUSTMENT -760.00. THIS PROPERTY IS SIMILAR  IN
CONDITION   AND  SUPERIOR IN LOT  TO THE SUBJECT. SUBJECT
PROPERTY BATHS 3 FULL 0 HALF BATHS. COMPARABLE LISTING 1
COMMENTS BATHS 3 FULL 1 HALF BATHS. COMPARABLE LISTING 2
COMMENTS BATHS 2 FULL 1 HALF BATHS. COMPARABLE LISTING 3
COMMENTS BATHS 2 FULL 1 HALF BATHS. COMPARABLE SALE
COMMENTS CONTINUED.. AND  LOT TO THE SUBJECT  DUE TO THE
LIMITED COMPS IN THE AREA IT IS NECESSARY TO USE COMPS THAT
ARE OUTSIDE OF THE 180 DAY REQUIREMENT.DUE TO THE LACK OF THE
COMPS IT WAS NECESSARY TO TAKE A COMP WITH VARIANCE IN YEAR
BUILT.SC2  FAIR MARKET. 0.18 MILES FROM SUBJECT. 2000.00 BATHS
11380.0-

**Comments, cont:**

0 LIVING AREA 20.00 LOT SIZE -330.00 YEAR BUILT -10000.00 GARAGE
-500.00 FEATURES PORCH POOL. NET ADJUSTMENT 2570.00.          THIS
PROPERTY IS SIMILAR  IN  CONDITION   AND  SUPERIOR IN AGE  TO THE
SUBJECT  DUE TO THE LIMITED COMPS IN THE AREA IT IS NECESSARY
TO USE COMPS THAT ARE OUTSIDE OF THE 180 DAY REQUIREMENT.SC3
FAIR MARKET. 0.48 MILES FROM SUBJECT. -4000.00 BATHS -14470.00
LIVING AREA -10.00 BASEMENT -30.00 LOT SIZE -420.00 YEAR BUILT
-10000.00 GARAGE 10000.00 FEATURES. NET ADJUSTMENT -18930.00.
THIS PROPERTY IS SIMILAR  IN  CONDITION   AND  SUPERIOR IN GLA
AND AND  SUPERIOR IN BATH COUNT AND INFERIOR IN BED COUNT TO
THE SUBJECT. SUBJECT PROPERTY BATHS 3 FULL 0 HALF BATHS.
COMPARABLE SALE 1 COMMENTS BATHS 2 FULL 1 HALF BATHS.
COMPARABLE SALE 2 COMMENTS BATHS 2 FULL 1 HALF BATHS.
COMPARABLE SALE 3 COMMENTS BATHS 3 FULL 1 HALF BATHS.
VALUATION COMMENTS CONTINUED.. TO LOCATE COMPARABLE IT WAS
NECESSARY TO EXCEED BEDBATH COUNT AGE GARAGE LOT SIZE IN
THE REPORT. CLOSE DATE EXCEEDS OVER SIX MONTHS FOR SOLD
COMPS. THE MLS SEARCH CRITERIA LOOKED FOR COMPARABLE WITH A
GLA RANGE OF 2670 TO 4004 SQ.FT. AND WITHIN A RADIUS OF 1 MILE
FROM THE SUBJECT. THE SUBJECT IS LOCATED NEAR THE SCHOOL
WORSHIP PLACE PARK. ALL COMPARABLE HAVE  FACTORS AND
SUPPORT SUBJECT VALUE AND MARKETABILITY. IN DELIVERING FINAL
VALUATION THE MOST WEIGHT HAS BEEN PLACED ON CS1 AND LC2 AS
THEY ARE MOST SIMILAR TO SUBJECT CONDITION AND OVERALL
STRUCTURE.  SUBJECT ATTRIBUTES ARE FROM TAX RECORD.

**Comments, cont:**

*Order 44860993, SUBJECTFRONTVIEW.JPG*



*Order 44860993, SUBJECTSTREETVIEW.JPG*



*Order 44860993, SUBJECTADDRESSNUMBER.JPG*



*Order 44860993, COMPARABLESALE_1.JPG*



*Order 44860993, COMPARABLESALE_2.JPG*



*Order 44860993, COMPARABLESALE_3.JPG*



*Order 44860993, COMPARABLELISTING_1.JPG*



*Order 44860993, COMPARABLELISTING_2.JPG*



*Order 44860993, COMPARABLELISTING_3.JPG*

