UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
Timothy P. Neumann, Esq. [TN6429]
Broege, Neumann, Fischer & Shaver, LLC
25 Abe Voorhees Drive
Manasquan, New Jersey 08736
(732) 223-8484
*Attorneys For Debtor-in-Possession*
*George Sariotis*

| In Re: | Case No.: 19-32528/MBK |
|---|---|
| **GEORGE SARIOTIS**, | Chapter 11 |
| Debtor. | Judge: Hon. Michael B. Kaplan |

### FIRST MODIFIED DISCLOSURE STATEMENT PURSUANT TO §1125 OF THE BANKRUPTCY CODE DESCRIBING CHAPTER 11 PLAN PROPOSED BY GEORGE SARIOTIS

**PLEASE READ THIS DISCLOSURE STATEMENT CAREFULLY. THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THIS PLAN OF LIQUIDATION. THE PLAN PROPONENT BELIEVES THAT THIS PLAN OF LIQUIDATION IS IN THE BEST INTEREST OF THE CREDITORS AND THAT THE PLAN IS FAIR AND EQUITABLE. THE PROPONENTS URGE THAT YOU ACCEPT THE PLAN.**

Date:  December 31, 2020

    /s/   *George Sariotis*
          George Sariotis

1

# TABLE OF CONTENTS

| | Page |
|---|---|

I. INTRODUCTION ........................................................................... 4
A. Purpose of This Document ........................................................ 4
B. Confirmation Procedures .......................................................... 6
1. Time and Place of the Confirmation ......................................... 6
2. Deadline For Voting For or Against the Plan ............................. 6
3. Deadline For Objecting to the Confirmation of the Plan .............. 7
4. Identity of Person to Contact for More Information Regarding the Plan ... 7
C. Disclaimer ............................................................................. 7
II. BACKGROUND .......................................................................... 8
A. Description and History of the Debtor's Business ........................ 8
B. Principals/Affiliates of Debtor's Business .................................. 8
C. Management of the Debtor Before the Bankruptcy ....................... 8
D. Events Leading to Chapter 11 Filing ......................................... 8
E. Significant Events During the Bankruptcy .................................. 8
1. Bankruptcy Proceedings .......................................................... 8
2. Other Legal Proceedings .......................................................... 9
3. Actual and Projected Recovery of Preferential or Fraudulent Transfers ... 9
4. Procedures Implemented to Resolve Financial Problems ............... 9
5. Current and Historical Financial Conditions ............................... 9
III. SUMMARY OF THE PLAN OF REORGANIZATION ...................... 10
A. What Creditors and Interest Holders Will Receive Under the Proposed Plan ... 10
B. Unclassified Claims ................................................................ 10
1. Administrative Expenses and Fees ........................................... 10
2. Priority Tax Claims ................................................................ 12
C. Classified Claims and Interests ................................................ 13
1. Classes of Secured Claims ....................................................... 13
2. Classes of Priority Unsecured Claims ....................................... 17
3. Class of General Unsecured Claims ........................................... 18
4. Class(es) of Interest Holders ................................................... 18
D. Means of Effectuating the Plan ................................................ 18
1. Funding for the Plan ............................................................... 18
2. Post-confirmation Management ................................................ 19
3. Disbursing Agent ................................................................... 19
E. Other Provisions of the Plan .................................................... 19
1. Executory Contracts and Unexpired Leases ............................... 19
2. Changes in Rates Subject to Regulatory Commission Approval ...... 20
3. Retention of Jurisdiction ......................................................... 20
4. Procedures for Resolving Contested Claims ............................... 20
5. Effective Date ....................................................................... 21
6. Modification .......................................................................... 21
F. Tax Consequences of Plan ....................................................... 21
G. Risk Factors ......................................................................... 23
IV. CONFIRMATION REQUIREMENTS AND PROCEDURES ............. 23
A. Who May Vote or Object ........................................................ 24

1. Who May Object to Confirmation of the Plan ........................................ 24
2. Who May Vote to Accept/Reject the Plan ............................................ 24
a. What Is an Allowed Claim/Interest ................................................... 24
b. What Is an Impaired Claim/Interest ................................................. 25
3. Who Is Not Entitled to Vote ............................................................... 25
4. Who Can Vote in More Than One Class ............................................. 26
5. Votes Necessary to Confirm the Plan ................................................ 26
6. Votes Necessary for a Class to Accept the Plan ............................... 26
7. Treatment of Nonaccepting Classes .................................................. 26
8. Request for Confirmation Despite Nonacceptance by Impaired Class(es) ...... 27
B. Liquidation Analysis ......................................................................... 27
C. Feasibility ......................................................................................... 28
V. EFFECT OF CONFIRMATION OF PLAN .......................................... 30
A. Discharge .......................................................................................... 30
B. Revesting of Property in the Debtor .................................................. 30
C. Modification of Plan .......................................................................... 31
D. Post-Confirmation Conversion/Dismissal ......................................... 31

# I.

## INTRODUCTION

George Sariotis is the debtor in this Chapter 11 bankruptcy case. On, December 2, 2019 (the "Petition Date"), George Sariotis (the "Debtor") commenced a bankruptcy case by filing a voluntary Chapter 11 petition under the United States Bankruptcy Code ("Code"), 11 U.S.C. §101, *et seq*. Chapter 11 of the Code allows the Debtor, and under some circumstances, creditors and other parties in interest, to propose a plan of liquidation ("Plan"). The Plan may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. George Sariotis is the party proposing the Plan. THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE PLAN, WHICH IS ANNEXED HERETO AS **EXHIBIT A**. This is a plan of liquidation. In other words, the Proponent seeks to accomplish payments under the Plan by selling his assets. The Effective Date of the proposed Plan is 30 days after entry of an Order of the Bankruptcy Court confirming the Plan.

George Sariotis is referred to in this Disclosure Statement as the "Debtor" or sometimes as the "Proponent." Section I-B of the Plan contains a list of defined terms all of which, when used in this Disclosure Statement, have the same meaning as set forth in the aforesaid section I-B of the Plan.

**A. Purpose of This Document.** This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan. **READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT: (1) WHO CAN VOTE OR OBJECT; (2) THE PROPOSED TREATMENT OF YOUR CLAIM (i.e., what your claim will receive**

4

**if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOU WOULD RECEIVE IN LIQUIDATION;  (3) THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY; (4) WHAT THE COURT WILL CONSIDER WHEN DECIDING WHETHER TO CONFIRM THE PLAN; (5) THE EFFECT OF CONFIRMATION; AND (6) THE FEASIBILITY OF THE PLAN.**

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you. Be sure to read the Plan as well as the Disclosure Statement. If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern. Code Section 1125 requires a Disclosure Statement to contain "adequate information" concerning the Plan. The term "adequate information" is defined in Code Section 1125(a) as "information of a kind, and in sufficient detail," about a Debtors and their operations "that would enable a hypothetical reasonable investor typical of holders of claims or interests" of the Debtor to make an informed judgment about accepting or rejecting the Plan. The Bankruptcy Court ("Court") has determined that the information contained in this Disclosure Statement is adequate, and it has approved this document in accordance with Code Section 1125. This Disclosure Statement is provided to each creditor whose claim has been scheduled by the Debtor or who has filed a proof of claim against the Debtor as of the date of the approval of this Disclosure Statement. Under the Bankruptcy Code, your acceptance of the Plan may not be solicited unless you receive a copy of this Disclosure Statement prior to or concurrently with such solicitation.

**B. Confirmation Procedures**

<u>Persons Potentially Eligible to Vote on the Plan</u>**.** In determining acceptance of the Plan, votes will only be counted if submitted by a creditor whose claim is duly scheduled by the Debtor as undisputed, non-contingent and unliquidated, or who, prior to the deadline for filing claims ("Bar Date" see § IV, A, 2, a. below), has filed with the Court a proof of claim which has not been disallowed or suspended prior to computation of the votes on the Plan. The Ballot Form that you received does not constitute a proof of claim. If you are uncertain whether your claim has been correctly scheduled, you should check the Debtor's Schedules, which are on file at the office of the Clerk of the Bankruptcy Court located at: United States Bankruptcy Court, U.S. Court House, 402 East State Street, Trenton, New Jersey 08608. The Clerk of the Bankruptcy Court will not provide this information by telephone. ALTHOUGH THE COURT HAS APPROVED THIS DISCLOSURE STATEMENT, IT HAS NOT CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE. HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTORS AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

**1. Time and Place of the Confirmation Hearing.** The hearing at which the Court will determine whether to confirm the Plan will take place on                    **, 2021  at 10 a. m**, in the Courtroom of the Honorable Michael B. Kaplan, U.S.B.J., United States Bankruptcy Court, 402 East State Street, Trenton, New Jersey  08608.

**2. Deadline For Voting For or Against the Plan.** If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to:

> TIMOTHY P. NEUMANN, ESQ.
> BROEGE, NEUMANN, FISCHER & SHAVER, LLC
> 25 ABE VOORHEES DRIVE
> MANASQUAN, NEW JERSEY 08736

EMAIL: timothy.neumann25@gmail.com

Your ballot must be received by                    or it will not be counted.

**3. Deadline For Objecting to the Confirmation of the Plan.** Objections to the confirmation of

the Plan must be filed with the Court and served by regular mail, postage pre-paid, or by e-mail,

not later than                    ,  upon the following:

> TIMOTHY P. NEUMANN, ESQ.
> BROEGE, NEUMANN, FISCHER & SHAVER, LLC
> 25 ABE VOORHEES DRIVE
> MANASQUAN, NEW JERSEY 08736
> (732) 223-8484 (ext. 214)
> E-MAIL: timothy.neumann25@gmail.com

**4. Identity of Person to Contact for More Information Regarding the Plan.** Any interested

party desiring further information about the Plan should contact Timothy P. Neumann, Esq., c/o

Broege, Neumann, Fischer & Shaver, LLC, 25 Abe Voorhees Drive, Manasquan, New Jersey

08736  (732) 223-8484 (ext. 214) or via e-mail at: timothy.neumann25@gmail.com.

**C. Disclaimer.** The financial data relied upon in formulating the Plan is based on the books and

records of the Debtor. The information contained in this Disclosure Statement is provided by the

Debtor. The Plan Proponent represents that everything stated in the Disclosure Statement is true

to the Proponents' best knowledge. **PLEASE NOTE THAT THE APPROVAL OF THIS**

**DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT**

**CONSTITUTE A RULING ON THE MERITS, FEASIBILITY, OR DESIRABILITY OF**

**THE PLAN.**

7

## II.
## BACKGROUND

**A. Description and History of the Debtors' Businesses.** The Debtor is an individual residing at 1801 Pitney Street, Oakhurst, New Jersey, 17755; The Debtor owns the following personal property: clothing, household goods and furnishings; collectibles of value; clothing. Debtor George Sariotis is a contractor by trade but is currently not receiving income due to employment difficulties related to the Covid-19 pandemic. He has been actively pursuing gainful employment as a construction consultant and is receiving Social Security and pension disbursements. The Debtor owns his home at 1801 Pitney Street, Oakhurst, New Jersey where he resides, a residential property located at 61 Redwood Drive, Ocean Township, New Jersey, and a vacant undeveloped parcel of land located at 1046 Wayside Road, Tinton Falls, New Jersey.

**C. Management of the Debtor Before and After the Bankruptcy.** The Debtor is an individual and manages his own financial affairs and will continue to do so after the bankruptcy case is over.

**D. Events Leading to Chapter 11 Filing.** The Debtor underwent significant downturn in his ability to generate income following the Covid-19 pandemic.

**E. Significant Events During the Bankruptcy**

**1. Bankruptcy Proceedings.**

(a)     The Debtor filed this bankruptcy proceeding on December 2, 2019.

(b)     On January 29, 2020, a Motion for Relief From the Automatic Stay was filed by Two River Community Bank ("Two River") as to the Debtor's real property located at: 1801 Pitney Street, Oakhurst, New Jersey (the "Pitney Property"); 61 Redwood Drive, Ocean Township, New Jersey (the "Redwood Property"); and 1046 Wayside Road, Tinton Falls, New Jersey (the "Wayside Property"). Two River was granted stay relief

as to the Wayside Property in order to schedule a sheriff sale and foreclose on its judgment. Although no sheriff sales are being held in Monmouth County Two River has requested that the Wayside Property be listed for sale. Limited stay relief was granted as to both the Redwood Property and the Pitney Property allowing Two Rivers to seek entry of a foreclosure judgment upon which time it must move before the Court for authorization to complete a sheriff sale.

(c)     By Order dated February 5, 2020, the Court approved the employment of the law firm of Broege, Neumann, Fischer & Shaver, LLC as attorneys for the Debtor.

(d)     On July 23, 2020, Selene Finance, LP ("Selene"), filed a Motion for Relief From the Automatic Stay as to the Pitney Property. The motion was resolved via consent order whereby Selene has agreed to accept monthly adequate protection payments of $1,211.47 from the Debtor. The Debtor has further agreed to sell the property by September 21, 2021.

(e)     On August 20, 2020 the Selene claim was transferred to Specialized Loan Servicing, LLC.

(f)     On August 21, 2020, the Court entered an Order granting the application for retention of realtor Burke & Manna to market the Pitney Property.

(g)     The Debtors have filed this Plan and this Disclosure Statement.

## 2. Other Legal Proceedings.

(a) Woodhaven Lumber And Millwork vs. George Sariotis, GCS Contractors Corp., DC-009067-15; Default Judgment $5,497.42.

(b)     Discover Bank vs. George Sariotis; pending in the Monmouth County Special Civil Part DC-003304-19; Default Judgment $14,231.42.

(c)    Aaron And Company vs. George Sariotis, G C S Contractors Corp.;  pending in the Monmouth County Special Civil Part; DC-009578-16; Default Judgment $5,438.13.

(d)    Joseph Fazio Wall LLC vs. Geroge Sariotis, GCS Contractors Corp.; DC-003029-15; Default Judgment $15,183.80.

(e)    American Builders vs. George Sariotis, GCS Contractors Corp. DC-011741-14; Default Judgment $6,584.44.

(f)    Jaeger Lumber And Supply Co., Inc vs. George Sariotis, GCS Contractors Corp., DC-011348-14; Default Judgment $7,817.59.

(g)    Two River Community Bank vs. Sariotis, et als, L-2903-17: Default Judgment.

(h)    Gregory Sariotis, Christopher Sariotis, George Sariotis, and Sariotis Enterprisesv. Matthew Tucci, MON-L-3242-19; Default Judgment $130,094.10.


3. **Actual and Projected Recovery of Preferential or Fraudulent Transfers.** The Debtor does not contemplate initiating any actions to recover fraudulent conveyance and preferences. The Debtor made no payments, which would be preferential transfers that are subject to avoidance and recovery under § 547 of the Bankruptcy Code.

4. **Procedures Implemented to Resolve Financial Problems.** The Debtor has retained a realtor and proposes to market and sell his real property.

5. **Current and Historical Financial Conditions.**  Based upon the schedules filed by the Debtors as modified by the proofs of claim filed by creditors, it appears that the assets and non-contingent, liquidated liabilities of the Debtors as of the Petition Date were as follows:

| ASSETS | |
|---|---|
| 1801 Pitney Street, Oakhurst Township New Jersey | 657,000.00 |
| 61 Redwood Drive, Ocean Township, New Jersey | 587,000.00 |

| | |
|---|---|
| 1046 Wayside Road, Tinton Falls, New Jersey | 160,000.00 |
| Personal/Household Items | 5,543.00 |
| **TOTAL ASSETS** | **1,409,543** |
| **LIABILITIES** | |
| Two River Community Bank  (Total Omnibus Loans) | 1,295,355.40 |
| Joseph Fazio-Wall, LLC | 14,930.01 |
| Infiniti Financial Services | 14,040.00 |
| Unsecured Creditors | 36,199.86 |
| **TOTAL LIABILITIES** | **1,360,525.27** |

## III.

## SUMMARY OF THE PLAN OF REORGANIZATION

**A. What Creditors and Interest Holders Will Receive Under the Proposed Plan.** The Plan classifies claims and interests in various classes. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive.

**B. Unclassified Claims.** Certain types of claims are not placed into voting classes. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponent has not placed the following claims in a class:

**1. Administrative Expenses and Fees.**  Administrative expenses are claims for fees, costs or expenses of administering the Debtor's Chapter 11 case, which are allowed under Code Section 507(a)(1), including all professional compensation requests pursuant to Sections 330 and 331 of the Code. The Code requires that all administrative expenses including fees payable to the Bankruptcy Court and the Office of the United States Trustee, which were incurred during the pendency of the case must be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment. The following chart lists all of the Debtor's unpaid administrative

fees and expenses ("Compensation"), an estimate of future professional fees and other administrative claims and fees and their treatment under the Plan:

| NAME | TYPE OF CLAIM | TREATMENT | ESTIMATED AMOUNT |
|------|---------------|-----------|------------------|
| Clerk's Office | Fees | Paid in full on Effective Date | 0 |
| Office of U.S. Trustee | Fees | Paid in full on Effective Date | 0 |
| Broege, Neumann, Fischer & Shaver LLC | Legal Fees and Cost Reimbursement (estimated) | In the event the Debtor cannot pay in full on the Effective Date counsel agrees to waive its rights and accept deferred payments over time in accordance with a schedule to be worked out between counsel and the Debtor. | 5,000.00 |
| | | | TOTAL    5,000.00 |

Court Approval of Professional Compensation Required: Pursuant to the Bankruptcy Code, the Court must rule on all professional compensation and expenses listed in this chart before the compensation and expenses will be owed. The professional in question must file and serve a properly noticed fee application for compensation and reimbursement of expenses and the Court must rule on the application. Only the amount of compensation and reimbursement of expenses allowed by the Court will be owed and required to be paid under this Plan as an administrative claim. Each professional person who asserts a further administrative claim that accrues before the confirmation date shall file with the Bankruptcy Court, and serve on all parties required to receive notice, an application for compensation and reimbursement of expenses no

later than thirty (30) days after the Effective Date of the Plan. Failure to file such an application

timely shall result in the professional person's claim being forever barred and discharged. Each

and every other person asserting an administrative claim shall be entitled to file a motion for

allowance of the asserted administrative claim within ninety days of the Effective Date of the

Plan, or such administrative claim shall be deemed forever barred and discharged. No motion or

application is required to fix the fees payable to the Clerk's Office or Office of the United States

Trustee. Such fees are determined by statute. As indicated above, the Debtors will need to pay

the administrative claims and fees on the Effective Date of the Plan unless a claimant has agreed

to be paid later or the Court has not yet ruled on the claim.

**2. Priority Tax Claims.** Priority tax claims are certain unsecured income, employment and other

taxes described by Code Section 507(a)(8). The Code requires that each holder of such a Section

507(a)(8) priority tax claim receive on account of such claim regular installment payments in

cash—

> (i) of a total value, as of the effective date of the plan, equal to the allowed amount of
>
> such claim;
>
> (ii) over a period ending not later than 5 years after the date of the order for relief under
>
> section 301, 302, or 303; and
>
> (iii) in a manner not less favorable than the most favored nonpriority unsecured claim
>
> provided for by the plan (other than cash payments made to a class of creditors under
>
> section 1122 (b)).

The following chart lists all of the Debtors' Section 507(a)(8) priority tax claims and their

treatment under the Plan:

| DESCRIPTION | AMOUNT OF CLAIM | TREATMENT |
| --- | --- | --- |

13

| None | N/A | N/A |
| --- | --- | --- |
|  |  |  |

## C. Classified Claims and Interests

1. **Classes of Secured Claims.** Secured claims are claims secured by liens on property of the estate. The following chart lists all classes of creditors containing the holders of the Debtor secured pre-petition claims and their treatment under this Plan:

| CLASS | Claim Description | Impaired | Treatment |
| --- | --- | --- | --- |
| 1 | Secured Claim of Specialized Loan Servicing, LLC ("SLS"), in the amount of $135,889.33, secured by a first mortgage on real property commonly known as 1801 Pitney Street, Oakhurst, New Jersey. | YES | The Debtor and Secured Creditor have entered into an agreement whereby SLS has agreed to accept monthly adequate protection payments of $1,211.47 from the Debtor. The Debtor has further agreed to sell the property by September 21, 2021. |
| 2 | Secured Claim of Two River Community Bank is classified as an omnibus claim in the amount of $1,295,355.40 secured by: a second, third, fourth, and fifth mortgage on real property commonly known as 1801 Pitney Street, Ocean Township, New Jersey; a first, second, and third mortgage on real property commonly known as 61 Redwood Drive, Ocean Township, New Jersey; and a first and second mortgage on real | YES | The Debtor shall market and sell each of the Properties with a closing date no later than September 21, 2021. On account of its mortgages and/or foreclosure proceedings, Secured Creditor shall be paid in order of priority, principal, interest, late charges, and allowable counsel fees. To the extent the net proceeds are insufficient to pay any of the mortgages in full, the unpaid balances shall be reclassified as unsecured. In the event the Debtor |

14

| | property known as 1046 Wayside Road, Tinton Falls, New Jersey (collectively the "Properties"). | | is unsuccessful in the marketing and sale of any of the properties, Secured Creditor shall be free to proceed with remedies allowable by state law. The holder of the Claim(s) in this Class shall retain its prepetition lien(s), and all rights of the holder of the Claim(s) in this Class, to the extent not inconsistent with the Plan shall remain as set forth in the prepetition loan documents and as provided by applicable non-bankruptcy law. |
|---|---|---|---|
| 3 | Secured Claim of Infiniti Financial Services in the amount of $14,040.00. | NO | The creditor filed a secured claim. This not a secured claim. The Debtor is simply co-signor on spouse's auto lease. This claim will be reclassified as unsecured and paid by Debtor's spouse in accordance with the lease terms. |
| 4 | Secured Claim Joseph Fazio-Wall, LLC in the amount of $14,930.01. | YES | There are liens on the property that are superior to the liens of this creditor. This claim will be modified to an unsecured claim pursuant to 506(a) and (d) and the lien shall be void. |

2.  **Classes of Priority Unsecured Claims.** Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim. However, a class of unsecured priority claim holders may vote to accept deferred cash

payments of a value, as of the Effective Date, equal to the allowed amount of such claims. The Debtor is not indebted for any amounts which would be entitled to priority under sections 507(a)(3), (a)(4), (a)(5), (a)(6), or (a)(7) of the Bankruptcy Code.

3. **Class of General Unsecured Claims.** General unsecured claims are uncollateralized claims not entitled to priority under Code Section 507(a). The following chart identifies this Plan's treatment of the class containing all of Debtor' general unsecured claims:

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 5 | Unsecured claims not entitled to priority totaling approximately $36,199.86. | YES | The holders of the Allowed Claims in this Class shall be paid a total of $302 per month distributed pro rata (approximately 50% of Allowed Class 5 Claims), payable over a period of 5 years: commencing on the Effective Date and continuing every year thereafter until the payments have been paid in full. |

4. **Class(es) of Interest Holders.** Interest holders are the parties who hold ownership interest (i.e., equity interest) in the Debtors. Since the Debtors are individuals, they are the equity holders of their assets. The following chart identifies the Plan's treatment of the class of interest holders:

| CLASS | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 6 | Debtor's ownership interests in his assets. | NO | The Debtor shall retain ownership of his assets except to the extent provided in the Plan. |

**D. Means of Effectuating the Plan.**

1. **Funding for the Plan.** The funds needed to fulfill the Debtor's obligations under the Plan

will be derived from the sale of the Debtor's real property. In the event the Debtor is able to resume employment following Plan confirmation the Debtor is entitled to file a modified plan of reorganization rather than liquidation whereby he shall attempt to restructure his debts in accordance with agreements made with his secured creditors.

2. **Post-Confirmation Management.** The Debtor is an individual and manages his own financial affairs and will continue to do so after the Plan is confirmed.

1. **Disbursing Agent.** Broege, Neumann, Fischer & Shaver, LLC, the attorneys of the Debtor, shall act as the Disbursing Agent for purposes of making the initial distributions required on the Effective Date. The Disbursing Agent shall serve without bond.

**E. Other Provisions of the Plan.**

1. **Executory Contracts and Unexpired Leases.**

**A. Assumptions**. The following are the unexpired leases and executory contracts to be assumed as obligations of the reorganized Debtor under this Plan: <u>Infiniti Financial Services</u>. The Debtor is co-signor on his spouse's auto lease. This claim will be paid by Debtor's spouse in accordance with the lease terms.

**B. Rejections**. The following are the unexpired leases and executory contracts to be rejected as obligations of the reorganized Debtors under this Plan:  None. On the Effective Date, all executory contracts not assumed shall be deemed to be rejected.

The order confirming the Plan shall constitute an order approving the rejection of the lease or contract. If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan. See Disclosure Statement for the specific date. **THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM**

**ARISING FROM THE REJECTION OF A LEASE OR CONTRACT IS UP TO AND INCLUDING SIXTY (60) DAYS FOLLOWING THE ENTRY OF THE CONFIRMATION ORDER.** Any claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

**2. Changes in Rates Subject to Regulatory Commission Approval.** This Debtor is not **subject** to governmental regulatory commission approval of its rates.

**3. Retention of Jurisdiction.** The Court shall retain jurisdiction of this case pursuant to the provisions of Chapter 11 of the Bankruptcy Code, pending the final allowance or disallowance of all Claims affected by the Plan, and to make such orders as are necessary or appropriate to carry out the provisions of this Plan. In addition, the Court shall retain jurisdiction to implement the provisions of the Plan in the manner as provided under Section 1142, sub-paragraphs (a) and (b) of the Bankruptcy Code. If the Court abstains from exercising, or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter set forth in this Section, or if the Debtors or the reorganized Debtors elect to bring an action or proceeding in any other forum, then this Section shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court, public authority or commission having competent jurisdiction over such matters.

**5. Procedures for Resolving Contested Claims.** Objections to Claims and Equity Interests, except for those Claims more specifically deemed Allowed in the Plan, may be filed by the Reorganized Debtors or any party in interest up to and including sixty (60) days following the entry of the Confirmation Order. With respect to disputed Claims or disputed Equity Interests, the Disbursing Agent will hold in a separate interest-bearing reserve account such funds as

would be necessary in order to make the required distribution on the Claim or Equity Interest, as listed either in the Debtor's schedules or the filed proof(s) of claim. Funds held shall be released only upon entry of a Final Order resolving the dispute.

**6. Effective Date.** The Plan will become effective on the Effective Date, which is the date 30 days after entry by the Bankruptcy Court of the order of confirmation**.**

**7. Modification.** The Plan Proponent may alter, amend or modify the Plan at any time prior to the Confirmation Date and thereafter as provided in Section 1127(b) of the Bankruptcy Code.

**F. Tax Consequences of Plan.** CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers to possible tax issues this Plan may present to the Debtor. The Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules, which make it difficult to state completely and accurately all the tax implications of any action.

     1.Federal Income Tax Consequences to the Debtor.  Because the Debtor intends to repay all creditors in full, the difference between the amount of the claims and the present value of the payments creditors are to receive on account of said claims will give rise to cancellation of indebtedness income under § 108 of the Internal Revenue Code.  The Debtor will not have to pay income taxes on account of such cancellation of indebtedness income, but will be required to write down tax loss carry forwards or, at the election of the Debtor, the adjusted bases in depreciable assets.

     2. Federal Income Tax Consequences to Holders of Allowed Claims. Holders of Allowed

Claims are likely to recognize a gain or loss equal to the amount realized under the Plan in respect of their Claims less their respective tax bases in their Claims. The amount realized for this purpose will generally equal the sum of the cash, discounted to present value, received by holders under the Plan in respect of their Claims. Any gain recognized by the holder of an Allowed Claim will generally be treated as capital gain, provided that the Claim represented a capital asset in such holders' hands. The character of any gain or loss recognized will also depend on a number of other factors, including the tax status of the holder, whether the Claim was purchased at a discount, and whether and to what extent the Holder has previously claimed a bad debt deduction with respect to the Claim. The capital gain will be considered long term with respect to Claims held for more than one year, and short term with respect to claims held for one year or less. The holders' aggregate tax basis for any consideration received under the Plan will generally equal the amount realized. The holding period for any consideration received under the Plan will generally begin with the date following the receipt of such consideration.

Holders of Allowed Claims not previously required to have included in their gross income any accrued but unpaid interest on a Claim may be treated as receiving taxable interest income to the extent any consideration received under the Plan is allocable to such interest. Holders previously required to include in their gross income any accrued but unpaid interest on a Claim may be entitled to recognize a deductible loss to the extent such interest is not satisfied under the Plan. Holders of Allowed Claims constituting installment obligations for tax purposes may be required to recognize currently any gain remaining with respect to the obligations if pursuant to the Plan the obligation is considered to be satisfied at other than its face value, distributed, transmitted, sold or otherwise disposed of within the meaning of section 453(b) of the IRC.

A holder who under the Plan receives in respect of its Allowed Claim an amount less than the holders' tax basis in such Claim may be entitled in the year of receipt or in an earlier year to a bad debt deduction in some amount under Section 166 of the IRC or a worthless securities deduction under Section 165 (g) of the IRC. A holder of an Allowed Claim may be entitled to a bad debt deduction with respect to such Claim only if (a) such holder is a corporation, or (b) such Claim constituted a debt either (i) created or acquired (as the case may be) in connection with a trade or business of such holders or (ii) debt the loss from the worthlessness of which is incurred in such Holder's trade or business. A holder that has previously recognized a bad debt deduction with respect to its Claim, however, may be required to include in its gross income (as ordinary income) any amounts received under the Plan to the extent such amounts exceed the holders' adjusted basis in such Claim.

**G. Risk Factors.** The following discussion is intended to be a non-exclusive summary of certain risks attendant upon the consummation of the Plan. You are encouraged to supplement this summary with your own analysis and evaluation of the Plan and Disclosure Statement, in their entirety, and in consultation with your own advisors. Based on the analysis of the risks summarized below, the Plan Proponent believes that the Plan is viable and will meet all requirements of confirmation:

1. <u>Inability to make plan payments based upon future loss of income</u>. The Debtor is relying upon his ability to generate proceeds from the sale of real property. Any increase in his personal income could assist his ability to make payments required by the Plan

**IV.**

## CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX. The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. The proponent CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic. Many requirements must be met before the Court can confirm a Plan. Some of the requirements include that the Plan must be proposed in good faith, that creditors or interest holders have accepted the Plan, that the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and that the Plan is feasible. These requirements are not the only requirements for confirmation.

**A. Who May Vote or Object**

**1. Who May Object to Confirmation of the Plan.** Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

**2. Who May Vote to Accept/Reject the Plan.** A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim that is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

**a. What Is an Allowed Claim/Interest.** As noted above, a creditor or interest holder must first have an allowed claim or interest to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim. When an objection to a claim or interest is filed, the creditor or interest holder holding the claim

22

or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes. A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed. A claim is deemed allowed if (1) it is scheduled on the Debtors' schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest.

**b. What Is an Impaired Claim/Interest**. As noted above, an allowed claim or interest only has the right to vote if it is in a class that is impaired under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of their claim plus interest. In this case, the Proponent believes that classes ONE, TWO, and FOUR are impaired and that holders of claims or interests in each of these classes are therefore entitled to vote to accept or reject the Plan. The Proponent believes that class THREE is unimpaired and therefore are not entitled to vote to accept or reject the Plan. Parties who dispute the Proponent's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Proponent has incorrectly characterized their class.

**3. Who Is Not Entitled to Vote.** The following four types of claims are not entitled to vote: (1) claims that are not Allowed Claims; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code Section 507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Code Section 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims

are not placed in classes and they are required to receive certain treatment specified by the Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

**4. Who Can Vote in More Than One Class.**  A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

**5. Votes Necessary to Confirm the Plan.** If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later in Section (IV.A.8.).

**6. Votes Necessary for a Class to Accept the Plan.** A class of claims is considered to have accepted the Plan when more than one-half in number and at least two-thirds in dollar amount of the allowed claims that actually voted, voted in favor of the Plan. A class of interests is considered to have accepted the Plan when at least two-thirds in amount of the allowed interest-holders of such class which actually voted, voted to accept the Plan.

**7. Treatment of Nonaccepting Classes.** As noted above, even if all impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Code. The process by which nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown". The Code

allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets

all consensual requirements except the voting requirements of Section 1129(a)(8) and if the Plan

does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has

not voted to accept the Plan as referred to in 11 U.S.C. §1129(b) and applicable case law.

**8. Request for Confirmation Despite Nonacceptance by Impaired Class(es).** The party

proposing this Plan asks the Court to confirm this Plan by cramdown on impaired classes if any

of these classes do not vote to accept the Plan.

**B. Liquidation Analysis.** Another confirmation requirement is the "Best Interest Test", which

requires a hypothetical liquidation analysis. Under the Best Interest Test, if a claimant or interest

holder is in an impaired class and that claimant or interest holder does not vote to accept the

Plan, then that claimant or interest holder must receive or retain under the Plan property of a

value not less than the amount that such holder would receive or retain if the Debtor was

liquidated under Chapter 7 of the Bankruptcy Code. In a Chapter 7 case, the Debtor's assets are

usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of

properties on which the secured creditor has a lien. Administrative claims are paid next. Next,

unsecured creditors are paid from any remaining sales proceeds, according to their rights to

priority. Unsecured creditors with the same priority share in proportion to the amount of their

allowed claims. Finally, interest holders receive the balance that remains after all creditors are

paid, if any.

In order for the Court to be able to confirm this Plan, the Court must find that all creditors

and interest holders who do not accept the Plan will receive at least as much under the Plan as

such holders would receive under Chapter 7 liquidation. Because the assets of the Debtor is

greater than what the Debtor owes his creditors, the Debtor believes that creditors will receive at

least as much under the Plan as such creditor or interest holder would receive under Chapter 7

liquidation. The Debtor's opinion as to the likely results of liquidation is as follows:

| ASSETS | |
|---|---|
| 1801 Pitney Street, Oakhurst, New Jersey | 657,000.00 |
| 61 Redwood Drive, Ocean Township, New Jersey | 587,000.00 |
| 1046 Wayside Road, Tinton Falls, New Jersey | 160,000.00 |
| Personal/Household Items | 5,543.00 |
| **TOTAL ASSETS** | **1,409,543** |
| **LIABILITIES** | |
| Two River Community Bank  (Total Omnibus Loans) | 1,295,355.40 |
| Joseph Fazio-Wall, LLC | 14,930.01 |
| Infiniti Financial Services | 14,040.00 |
| Unsecured Creditors | 36,199.86 |
| **TOTAL LIABILITIES** | **1,360,525.27** |
| AMOUNT PAID UNDER CHAPTER 7* | 0 |
| AMOUNT TO BE PAID PER PLAN | 18,100 |
| Expressed as % of claim | 50% |

*The Chapter 7 expenses of administration are estimated to be approximately 10% of the Debtor's total asset pool. This estimation is based upon the Chapter 7 trustee' s right to his or her own administrative expenses in addition to expenses related to retention of an attorney, an appraiser, possibly an accountant, and a realtor to market and sell the real properties.

**C. Feasibility.** Another requirement for confirmation involves the feasibility of the Plan, which

means that confirmation of the Plan is not likely to be followed by the liquidation or the need for

further financial reorganization of the Debtor or any successor to the Debtor under the Plan,

unless such liquidation or reorganization is proposed in the Plan. There are at least two important

aspects of a feasibility analysis.

 (1) The first aspect considers whether the Debtor will have enough cash on hand on the

Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on such

date, including the amount that will be needed.   Plan Proponents maintain that this aspect of feasibility is satisfied as illustrated in the following chart:

| | |
|---|---:|
| Cash Debtors estimate they will have on hand by Effective Date | $6,000.00 |
| **To Pay:** Administrative claims – professionals | 5,000.00 |
| **To Pay:** Statutory costs & charges | 500.00 |
| **To Pay:** first distribution to Class 5 | 301.00 |
| TOTAL | 5,801.00 |

The sources of the cash Debtors will have on hand by the Effective Date, as shown above are:

| | |
|---|---:|
| Cash in DIP Account now | $4,900.00 |
| Less expenses | $4,600.00 |
| $ Total | $300.00 |

 (2) The second aspect considers whether the Proponent will have enough cash over the life of the Plan to make the required Plan payments.

## V.
### EFFECT OF CONFIRMATION OF PLAN

**A. Discharge.** The Bankruptcy Code provides that in the case of Debtors who are individuals, a discharge is not normally issued until the Debtor has completed all payments under the plan. An exception exists in the case of Debtors who have made payments to unsecured creditors which have a value, as of the effective date of the plan, not less than the amount that would have been paid on such claim if the estate of the Debtors had been liquidated under chapter 7 on the effective date, provided modification of the plan under section 1127 of the Code is not

practicable.   Consequently**,** the Plan provides that the Debtor shall not be discharged of liability for payment of debts incurred before confirmation of the Plan until all payments under the plan are completed, unless, after notice and hearing, the Court permits an earlier discharge. If Confirmation of the Plan does not occur or if, after Confirmation occurs, the Debtors elect to terminate the Plan, the Plan shall be deemed null and void. In such event, nothing contained in the Plan shall be deemed to constitute a waiver or release of any claims against the Debtor or his estate or any other persons, or to prejudice in any manner the rights of the Debtor or his estate or any person in any further proceeding involving the Debtor or his estate. The provisions of the Plan shall be binding upon the Debtor, all Creditors and all Equity Interest Holders, regardless of whether such Claims or Equity Interest holders are impaired or whether such parties accept the Plan, upon Confirmation thereof.

**B. Revesting of Property in the Debtors**. Upon confirmation, all property of the estate shall revest in the Debtor.

**C. Modification of Plan.** The Proponent may modify the Plan at any time before confirmation. However, the Court may require a new disclosure statement and/or revoting on the Plan if Proponent modifies the plan before confirmation. The Proponent may also seek to modify the Plan at any time after confirmation so long as (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modification after notice and a hearing. Proponent further reserves the right to modify the treatment of any Allowed Claims at any time after the Effective Date of the Plan upon the consent of the Creditor whose Allowed Claim treatment is being modified, so long as no other Creditors are materially adversely affected.

**D. Post-Confirmation Conversion/Dismissal.** A creditor or party in interest may bring a motion to convert or dismiss the case under Section 1112(b), after the Plan is confirmed, if there is a

28

default in performance of the Plan or if cause exists under Section 1112(b). If the Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate, and the automatic stay will be reimposed upon the revested property only to the extent that relief from stay was not previously granted by the Court during this case. Quarterly fees pursuant to 28 U.S.C. § 1930(a)(6) continue to be payable to the Office of the United States Trustee post-confirmation until such time as the case is converted, dismissed, or closed pursuant to a final decree.