# EXHIBIT "B"

SEP 11 2009

**RECORDATION REQUESTED BY:**
TWO RIVER COMMUNITY BANK
Middletown
1250 Highway 35 South
Middletown, NJ 07748

00BRSO

**WHEN RECORDED MAIL TO:** RR
TWO RIVER COMMUNITY BANK
Middletown
1250 Highway 35 South
Middletown, NJ 07748
(Paradigm Title Group LLC)

**SEND TAX NOTICES TO:**
TWO RIVER COMMUNITY BANK
Middletown
1250 Highway 35 South
Middletown, NJ 07748

—————————————— [Space Above This Line For Recording Data] ——————————————

This Mortgage prepared by: X _____
Name of Signer: Latrice Payne, Loan Processor
TWO RIVER COMMUNITY BANK

OCT 23 2009

(Stamp, rotated 180°:)
TOTAL PAID $110.00
FEES
COUNTY RECORDING $110.00
Total Pages: 9
PAGE: 2173
BOOK-OR-8203
10:03:02 AM
Oct 26, 2009
RECORDED ON
2009120506
INSTRUMENT NUMBER
MONMOUTH COUNTY, NJ
M CLAIRE FRENCH, CTY CLK

# MORTGAGE

**INDEX.** The following index is for convenience purposes only and is not to be used to interpret or to define any provisions of this Security Instrument.

1. DEFINITIONS
   (A) Borrower
   (B) Lender
   (C) Note
   (D) Owner
   (E) Property
   (F) Related Documents
   (G) Security Instrument
   (H) Sums Secured
2. OWNER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY
3. DESCRIPTION OF THE PROPERTY
4. OWNER'S RIGHT TO MORTGAGE THE PROPERTY AND OWNER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY
5. OWNER'S PROMISE TO PAY
6. OWNER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS
7. NO CLAIM FOR CREDIT FOR TAXES
8. OWNER'S OBLIGATION TO MAINTAIN HAZARD INSURANCE
9. OWNER'S OBLIGATION TO MAINTAIN THE PROPERTY
10. LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY; MORTGAGE INSURANCE
11. POSSESSION AND USE
12. LENDER'S RIGHT TO INSPECT THE PROPERTY
13. AGREEMENTS ABOUT CONDEMNATION OF THE PROPERTY
14. CONTINUATION OF OWNER'S OBLIGATIONS AND OF LENDER'S RIGHTS
    (A) Owner's Obligations
    (B) Lender's Rights
15. OWNER'S OBLIGATIONS AND THOSE OF PERSONS TAKING OVER OWNER'S OBLIGATIONS
16. LOAN CHARGES
17. LEGISLATION AFFECTING LENDER'S RIGHTS
18. NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT
19. LAW THAT GOVERNS THIS SECURITY INSTRUMENT
20. OWNER'S COPY
21. DEFAULT
    (A) Fraud or Material Misrepresentation
    (B) Payment Default
    (C) Other Defaults

# NEW JERSEY TITLE INSURANCE COMPANY

File Number: 09-NJ01095

## SCHEDULE C
## LEGAL DESCRIPTION

ALL that certain tract or parcel of land, situated, lying and being in the Township of Ocean, County of Monmouth, State of New Jersey, more particularly described as follows:

Being known and designated as Lot 14 in Block 150.06 as shown on a map entitled, "Final Plat of Major Subdivision, Cedar Village at Ocean, Phase 2" prepared by John S. Truhan Consulting Engineers, Inc., dated August 2, 2001, which was filed in the Monmouth County Clerk's Office on June 2, 2004, as Map No. 294-21.

NOTE: Being Lot: 14, Block: 150.06; Tax Map of the Township of Ocean, County of Monmouth, State of New Jersey.

NOTE: Lot and Block shown for informational purposes only.

New Jersey Land Title
Insurance Rating Bureau
Plain Language Commitment 2006
Revised 9/10/07

NJRB 3-08
Effective 2/15/2007

| Loan No: ▮▮▮▮ | **MORTGAGE** (Continued) | Page 2 |
|---|---|---|

22. **LENDER'S RIGHTS UPON DEFAULT**
    (A) Accelerate Payment
    (B) Lender In Possession
    (C) Judicial Foreclosure
    (D) Nonjudicial Sale
    (E) My Payment of Rent
    (F) Deficiency Judgment
    (G) Election of Remedies
    (H) Attorneys' Fees; Expenses
23. **LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT**
24. **ASSOCIATION OF UNIT OWNERS**
25. **POWER OF ATTORNEY**
26. **INSURANCE**
27. **DEFAULT**
28. **MISCELLANEOUS PROVISIONS**
    (A) Amendments
    (B) Merger
    (C) Time is of the Essence
    (D) Waivers and Consents

**1. DEFINITIONS.** The following words are used often in this document. When they are used, they will have the following meanings:

(A) **Borrower.** Gregory Sariotis, Thalia Sariotis, George Sariotis and Cindy R. Sariotis and all other persons and entities signing the Note will sometimes be called "Borrower".

(B) **Lender.** TWO RIVER COMMUNITY BANK will be called "Lender."

(C) **Note.** The word "Note" means the promissory note signed by Borrower and dated September 2, 2009 in the original amount of **$280,000.00**. This amount is called "principal." The word "Note" includes all renewals of, extensions of, modifications of and substitutions for the promissory note or credit agreement. The interest rate on the Note is 5.375% a year based on a year of 360 days. The maturity date of this Security Instrument is October 1, 2039.

(D) **Owner.** Gregory Sariotis, Thalia Sariotis, George Sariotis and Cindy R. Sariotis sometimes will be called "Owner" and sometimes simply "I" or "me."

(E) **Property.** The property that is described in the section titled "DESCRIPTION OF THE PROPERTY" will be called the "Property".

(F) **Related Documents.** All promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Sums Secured will be called "Related Documents".

(G) **Security Instrument.** This mortgage document will also be called the "Security Instrument."

(H) **Sums Secured.** The amounts described below in the section titled "OWNER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY" sometimes will be called the "Sums Secured."

THIS MORTGAGE IS DATED September 2, 2009, BETWEEN Gregory Sariotis, whose address is 61 Redwood Drive, Ocean, NJ 07712; Thalia Sariotis, whose address is 61 Redwood Drive, Ocean, NJ 07712; George Sariotis, whose address is 1801 Pitney Street, Oakhurst, NJ 07755 and Cindy R. Sariotis, whose address is 1801 Pitney Street, Oakhurst, NJ 07755 (sometimes below will be called "Owner," "Borrower," "I," or "me"); and TWO RIVER COMMUNITY BANK, whose address is Middletown, 1250 Highway 35 South, Middletown, NJ 07748 (sometimes below will be called "Lender").

**2. OWNER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY.** I mortgage, grant and convey to Lender the Property, subject to the terms of this Security Instrument, to have and to hold all of the Property to Lender, and to its successors and assigns, forever. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who hold mortgages on real property. Those rights that the law gives to lenders who hold mortgages on real property include those rights known as "Mortgage Covenants." I am giving Lender these rights to protect Lender from

·Loan No: ████████████  **MORTGAGE**
(Continued)

Page 3

possible losses that might result if I fail to do any of the following:

(A) Pay all the amounts that I owe Lender as stated in the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument.

**3. DESCRIPTION OF THE PROPERTY.** I mortgage, grant and convey to Lender the Property described in (A) through (I) below.

(A) This Property is located in Monmouth County, State of New Jersey:

See attached Schedule A description, which is attached to this Security Instrument and made a part of this Security Instrument as if fully set forth herein.

The Real Property or its address is commonly known as 61 Redwood Drive, Township of Ocean, NJ 07712. The Real Property tax identification number is Lot 14 Block 150.06.

(B) All buildings and other improvements that are located on the Property described in subparagraph (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subparagraph (A) of this section. These rights are known as "easements, rights and appurtenances attached to the Property;"

(D) All rents and royalties from the Property described in subparagraph (A) of this section;

(E) All mineral, oil and gas rights and profits, water rights and stock that are part of the Property described in subparagraph (A) of this section;

(F) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subparagraph (A) of this section;

(G) All fixtures that are now or in the future will be on the Property described in subparagraphs (A) and (B) of this section;

(H) All of the rights and property described in subparagraphs (B) through (G) of this section that I acquire in the future; and

(I) All replacements of or additions to the Property described in subparagraphs (B) through (I) of this section.

**4. OWNER'S RIGHT TO MORTGAGE THE PROPERTY AND OWNER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY.** I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**THIS MORTGAGE IS GIVEN TO SECURE (A) PAYMENT OF THE SUMS SECURED AND (B) PERFORMANCE OF ALL OF MY OBLIGATIONS UNDER THIS MORTGAGE. I PROMISE AND I AGREE WITH LENDER AS FOLLOWS:**

**5. OWNER'S PROMISE TO PAY.** I will pay to Lender on time principal and interest due under the Note and any late charges due under the Note.

**6. OWNER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS.** I will pay all taxes, assessments, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will do this by making the payments on time to the person owed them. (In this Security Instrument, the word "person" means any person, organization, governmental authority or other party.) If I make direct payments, then promptly after making any of those payments I will give Lender a receipt which shows that I have done so.

Any claim, demand or charge that is made against the Property because an obligation has not been fulfilled is known as a "lien." I must promptly pay or satisfy a superior lien unless: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that



| Loan No: ▓▓▓▓▓ | MORTGAGE (Continued) | Page 4 |
|---|---|---|

other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give me a notice identifying the superior lien. I will then pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**7. NO CLAIM FOR CREDIT FOR TAXES.** I will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. I will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

**8. OWNER'S OBLIGATION TO MAINTAIN HAZARD INSURANCE.** I will obtain hazard insurance to cover all buildings and other Improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. If the Property is or becomes located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, I agree to obtain and maintain Federal Flood Insurance for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maxiumum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender. I agree to maintain such insurance for the term of the loan. In no event, however, shall I be required to provide hazard insurance in excess of the replacement value of the buildings and other improvements on the Property. I may choose the insurance company, but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable.

All of the insurance policies and renewals of those policies must include what is known as a "standard mortgagee clause" to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "proceeds." The proceeds will be used to repair or to restore the damaged Property unless: (A) it is not economically feasible to make the repairs or restoration; or (B) the use of the proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (C) Lender and I have agreed in writing not to use the proceeds for that purpose. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the proceeds will be used to reduce the amount that is owed to Lender under the Note and under this Security Instrument. If any of the proceeds remain after the amount that is owed to Lender has been paid in full, the remaining proceeds will be paid to me.

If I abandon the Property, or if I do not answer, within thirty (30) days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the proceeds. Lender may use the proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which is owed to Lender under the Note, that use will not delay the due date or change the amount of any of the monthly payments under the Note. However, I and Lender may agree in writing to those delays or changes.

If Lender acquires the Property as provided below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold.

**9. OWNER'S OBLIGATION TO MAINTAIN THE PROPERTY.** I will keep the Property in good repair. I will not destroy, damage or substantially change the Property, and I will not allow the Property to deteriorate.

**10. LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY; MORTGAGE INSURANCE.** If I fail to comply with any provision of this Security Instrument, or if any action or proceeding is commenced that would materially affect Lender's interests in the Property, Lender on my behalf may, but will not be required to, take any action that Lender thinks to be appropriate. Any amount that Lender spends or incurs in so doing will bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of my repayment. All such expenses, at Lender's option, will (A) be payable on demand, (B) be added to the balance of the Note and be apportioned among and be payable with any Installment payments to become due either during the term of any applicable insurance policy or during the remaining term of the Note, or (C) be treated as a balloon payment which will be


Loan No: ▓▓▓▓▓▓▓▓

**MORTGAGE**
**(Continued)**

Page 5

due and payable at the Note's maturity. This Security Instrument also will secure payment of these amounts. The rights provided for in this paragraph will be in addition to any other rights or any remedies to which Lender may be entitled on account of the default. Any action taken by Lender under this paragraph will not constitute a cure of any default so as to bar Lender from any remedy that it otherwise would have had under this Security Instrument.

If Lender required mortgage insurance as a condition for my loan, I will pay the premiums for that mortgage insurance. I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

**11. POSSESSION AND USE.** Until in default, I may remain in possession and control of and operate and manage the Property.

**12. LENDER'S RIGHT TO INSPECT THE PROPERTY.** Lender, and others authorized by Lender, may enter on and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before, or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

**13. AGREEMENTS ABOUT CONDEMNATION OF THE PROPERTY.** A taking of property by any governmental authority by eminent domain is known as "condemnation." I give to Lender my right: (A) to proceeds of all awards or claims for damages resulting from condemnation or other governmental taking of the Property; and (B) to proceeds from a sale of the Property that is made to avoid condemnation. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property, or if I do not answer, within thirty (30) days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which is owed to Lender under the Note, that use will not delay the due date or change the amount of any of the monthly payments under the Note. However, Lender and I may agree in writing to those delays or changes.

**14. CONTINUATION OF OWNER'S OBLIGATIONS AND OF LENDER'S RIGHTS.**

(A) **Owner's Obligations.** Lender may allow a person who takes over my rights and obligations to delay or to change the amount of the monthly payments of principal and interest due under the Note or under this Security Instrument. Even if Lender does this, however, that person and I will both still be fully obligated under the Note and under this Security Instrument.

Lender may allow delays or changes for a person who takes over my rights and obligations, even if Lender is not requested to do so. Lender will not be required to bring a lawsuit against such a person for not fulfilling obligations under the Note or under this Security Instrument, even if Lender is requested to do so.

(B) **Lender's Rights.** Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right to demand immediate payment in full of the amounts that are owed to Lender under the Note or under this Security Instrument.

**15. OWNER'S OBLIGATIONS AND THOSE OF PERSONS TAKING OVER OWNER'S OBLIGATIONS.** Any person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

If more than one person signs this Security Instrument as Owner, each of us is fully obligated to keep all of Owner's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together.

Loan No: 

**MORTGAGE**
**(Continued)**

Page 6

**16. LOAN CHARGES.** If the Note secured by this Security Instrument is subject to a law which sets maximum Note charges, and that law is finally interpreted so that the interest or other Note charges collected or to be collected in connection with the Note exceed permitted limits: (A) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (B) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**17. LEGISLATION AFFECTING LENDER'S RIGHTS.** If a change in applicable law would make any provision of the Note or this Security Instrument unenforceable, Lender may require immediate payment in full of all Sums Secured by this Security Instrument as that phrase is defined above. If Lender requires immediate payment in full under this Paragraph, Lender will take the steps and may act as specified below.

**18. NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT.** Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class, certified or registered mail unless applicable law requires use of another method. The notice will be addressed to me at the address shown at the beginning of this Security Instrument. A notice will be given to me at a different address if I give Lender notice of my different address. Any notice that must be given to Lender under this Security Instrument will be given by mailing it to the Lender's address shown at the beginning of this Security Instrument. A notice will be mailed to Lender at a different address if Lender gives me a notice of the different address. A notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph or of applicable law.

**19. LAW THAT GOVERNS THIS SECURITY INSTRUMENT.** This Security Instrument will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of New Jersey without regard to its conflicts of law provisions. This Security Instrument has been accepted by Lender in the State of New Jersey.

**20. OWNER'S COPY.** I will be given one conformed copy of the Note and of this Security Instrument.

**21. DEFAULT.** At Lender's option, I will be in default under this Security Instrument if any of the following happen:

   **(A) Fraud or Material Misrepresentation.** I commit fraud or material misrepresentation in connection with the terms of the Note.

   **(B) Payment Default.** I fail to meet the repayment terms of the Note for any outstanding balance.

   **(C) Other Defaults.** My act or failure to act adversely affects Lender's security interest in the Property, or any right of Lender's in such security.

**22. LENDER'S RIGHTS UPON DEFAULT.** If I am in default under this Security Instrument, this is what Lender may do, in addition to any other rights or remedies provided by law:

   **(A) Accelerate Payment.** Lender shall have the right at its option without notice to me to require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument, including any prepayment penalty which I would be required to pay.

   **(B) Lender In Possession.** Upon acceleration of the Sums Secured or abandonment of the Property, Lender (in person, by agent or by judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the Property and to collect the rents, including those past due. Any rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including but not limited to receiver's fees, premiums on the receiver's bonds and reasonable attorneys' fees and then to the other Sums Secured secured by this Security Instrument.

   **(C) Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing my interest in all or any part of the Property.

   **(D) Nonjudicial Sale.** If permitted by applicable law, Lender may foreclose my interest in the Property by non-judicial sale.

   **(E) My Payment of Rent.** If there is a judgment for Lender in a lawsuit for foreclosure and sale, I will pay to Lender reasonable rent from the date the judgment is entered for as long as I occupy the Property. However, this does not give me the right to occupy the Property.

   **(F) Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency

| Loan No: ▮▮▮▮▮▮▮ | **MORTGAGE**<br>**(Continued)** | Page 7 |
|---|---|---|

remaining on the Sums Secured after application of all amounts received from the exercise of the rights provided in this section.

**(G) Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of my obligations under this Security Instrument, after my failure to do so, that decision by Lender will not affect Lender's right to declare me in default and to exercise Lender's remedies.

**(H) Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Security Instrument, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Sums Secured payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. I also will pay any court costs, in addition to all other sums provided by law.

**23. LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will not be required to pay Lender for the discharge, but I will pay all costs of recording the discharge in the proper official records.

**24. ASSOCIATION OF UNIT OWNERS.** The following provisions apply if the Property has been submitted to unit ownership law or similar law for the establishment of condominiums or cooperative ownership of the Property:

**25. POWER OF ATTORNEY.** I grant an irrevocable power of attorney to Lender to vote in Lender's discretion on any matter that may come before the association of unit owners. Lender will have the right to exercise this power of attorney only after my default; however, Lender may decline to exercise this power as Lender sees fit.

**26. INSURANCE.** The insurance as required above may be carried by the association of unit owners on my behalf, and the proceeds of such insurance may be paid to the association of unit owners for the purpose of repairing or reconstructing the Property. If not so used by the association, such proceeds shall be paid to Lender.

**27. DEFAULT.** My failure to perform any of the obligations imposed on me by the declaration submitting the Property to unit ownership, by the bylaws of the association of unit owners, or by any rules or regulations of the association, will be an event of default under this Security Instrument. If my interest in the Property is a leasehold interest and such Property has been submitted to unit ownership, any failure by me to perform any of the obligations imposed on me by the Lease of the Property from its owner, any default under the Lease which might result in termination of the Lease as it pertains to the Property, or any failure by me and within my power as a member to prevent a default under the Lease by the association of unit owners or by any member of the association will be a default under this Security Instrument.

**28. MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Security Instrument:

**(A) Amendments.** What is written in this Security Instrument and in the Related Documents is my entire agreement with Lender concerning the matters covered by this Security Instrument. To be effective, any change or amendment to this Security Instrument must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**(B) Merger.** There shall be no merger of the interest or estate created by this Security Instrument with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**(C) Time is of the Essence.** Time is of the essence in the performance of this Security Instrument. This means that all deadlines for performance provided under this Security Instrument must be strictly complied with and that failure to do so will result in a default.

Loan No: ▓▓▓▓▓

**MORTGAGE**
**(Continued)**

Page 8

**(D) Waivers and Consents.** Lender will not be deemed to have waived any rights under this Security Instrument unless such waiver is in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right will operate as a waiver of such right or any other right. A waiver by any party of a provision of this Security Instrument will not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with that provision or any other provision. No prior waiver by Lender, nor any course of dealing between Lender and me, will constitute a waiver of any of Lender's rights or any of my obligations as to any future transactions. Whenever consent by Lender is required in this Security Instrument, the granting of such consent by Lender in any instance will not constitute continuing consent to later instances where such consent is required.

I ACKNOWLEDGE HAVING READ ALL THE PROVISIONS OF THIS SECURITY INSTRUMENT, AND I AGREE TO ITS TERMS.

I ACKNOWLEDGE RECEIPT, WITHOUT CHARGE, OF A TRUE AND CORRECT COPY OF THIS SECURITY INSTRUMENT.

**OWNER:**

X _____ [signature]
Gregory Sariotis

X _____ [signature]
Thalia Sariotis

X _____ [signature]
George Sariotis

X _____ [signature]
Cindy R. Sariotis

---

**INDIVIDUAL ACKNOWLEDGMENT**

STATE OF __New Jersey__ )
                         ) SS
COUNTY OF __Monmouth__   )

BE IT REMEMBERED that on this __2__ day of __September__, 20 __09__, before me, the undersigned authority, personally appeared **Gregory Sariotis; Thalia Sariotis; George Sariotis; and Cindy R. Sariotis** who, I am satisfied, are the persons named in the foregoing instrument, and I having first made known to them the contents thereof, they acknowledged that they signed, sealed and delivered the same as their voluntary act and deed. All of which is hereby certified.

[Notary Public]    JASON BRIAN WALTERS
                   NOTARY PUBLIC
                   STATE OF NEW JERSEY
                   COMM. ID 2340979
                   MY COMMISSION EXPIRES FEBRUARY 25, 2011

---

LASER PRO Lending, Ver. 5.44.00.002 Copr. Harland Financial Solutions, Inc. 1997, 2009. All Rights Reserved.
- NJ G:\CFI\LPL\F90.FC TR-4951 PR-36